# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN HOUSER, PH.D., FAHA,<br>*Plaintiff,*<br><br>v.<br><br>TEMPLE UNIVERSITY<br>AND ARTHUR M. FELDMAN, MD, PHD,<br>*Defendants.* | )<br>)<br>) Civil Action No. 2:21-cv-00676-WB<br>)<br>)<br>)<br>) JURY TRIAL DEMANDED<br>) |

### DECLARATION OF STEVEN HOUSER, PH.D., FAHA, IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION <u>FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION</u>

Steven Houser, Ph.D., FAFA, hereby states the following:

1. I am an adult individual and the Plaintiff in the above-captioned action, and I submit this Declaration in support of my Emergency Motion for Temporary Restraining Order and for Preliminary Injunction ("Motion") against Defendant, Temple University ("Temple"), for the reasons stated below and in the accompanying legal documents submitted on my behalf.

2. While I did not draft any of the legal arguments in any of the submissions, I have verified, through this Declaration, the factual bases supporting my Motion against Temple for its outrageous conduct.

3. I am competent to testify to the facts stated in this Declaration.

4. On Friday August 13, 2021, I received an email from Temple's in-house counsel, Laszlo Szabo, Esquire, demanding that I make myself available for interrogation and also that I make any and all documents, whether personal, professional or otherwise under my care or supervision, available for unfettered production to Temple on Tuesday, August 17, 2021 for an alleged matter which Temple has known about since at least September 2020 and which is a key event in this very litigation. The email I received, referred to as the Discovery Demands Email, is attached to the Motion as Exhibit "A."

1

5. I had substantively responded to Temple – over 6 months ago on or about January 22, 2021 – about the matter at issue and prior to the filing of this litigation.

6. Before January 22, 2021, other than to tell me that Temple had received information as stated in more detail below and to confirm receipt of my counsel's January 22 letter, I have heard and received nothing, outside of this litigation or in the litigation itself, from Temple about this so-called "inquiry" until last Friday.

7. I understand that previously in this litigation, at least two subpoenas to non-parties were served and that discussions regarding the production of documents pursuant to those subpoenas remain, as of now, ongoing.

8. I understand, too, that on August 4, 2021, written discovery requests (consisting of certain interrogatories and requests for production of documents) were served on Temple and the other Defendant in this case.

9. I know, as well, that Temple previously attempted to "stay" or stop discovery altogether in this case during the pendency of at least one set of its motions to dismiss.

10. The Court denied that motion to stop discovery.

11. As I understand the case, discovery is to proceed, and I have attempted to do so.

12. The Discovery Demands Email arises from an alleged inquiry – as detailed in the Amended Complaint[1] that I filed in this matter – that first appeared in an email dated September 25, 2020, in which Temple's Integrity Officer and Vice President of Research ("OVPR"), Michele Masucci ("Masucci"), sent me stating that Temple had been notified by the Office of Research Integrity of the Office of the Assistant Secretary for Health – U.S. Department of Health and Human Services (hereafter, "ORI") "that you [Dr. Houser] have been named in a

---

[1] I made the same allegations in the original Complaint, as well. In short, the fact that this bogus "inquiry" is part of the lawsuit is well known to Temple.

2

complaint regarding allegations of possible research misconduct stemming from but not limited to 'Clare Francis' complaints that were received by ORI, including but not limited to those noted here: https://pubpeer.com /search?q=steven+houser [hereafter, the "PubPeer Claims"]."

13. Masucci warned me "not to discuss the matter with colleagues" and to preserve and maintain "any and all records regarding your research[.]"

14. As an aside, "Clare Francis" is a pseudonym used to describe unverified and anonymous complaints or allegations by unspecified individuals regarding claimed cases of plagiarism or fabricated or duplicated figures appearing in scientific journals and papers. It is an academic pseudonym for an internet "troll."

15. PubPeer's own disclaimer states that "The success of the site is due to the expertise and diligence of our users, who create all of its content. Nevertheless, comments should always be considered as sources of potentially useful information whose veracity readers must evaluate for themselves."

16. PubPeer also states that it "does not review comments scientifically and provides no warranty as to their veracity."

17. Thus, PubPeer is an anonymous, open forum where reviewers criticize publications without peer review, fact checking or substantiation.

18. Thereafter, I heard nothing more from Temple or Masucci on the PubPeer Claims until January 2021.

19. By letter dated January 11, 2021, Masucci wrote me in follow up to her prior "notice" of the PubPeer Claims and listed 9 different papers published in various academic journals on a variety of topics, which were identified at PubPeer (hereafter, the "PubPeer Demand Letter").

3

20. Masucci's PubPeer Demand Letter does not identify any basis for any allegations other than the reference to PubPeer.

21. In point of fact, cross-referencing the list of 9 articles identified by Masucci in her PubPeer Demand Letter on PubPeer's own site confirms that comments on most of the claimed, anonymous criticisms appeared more than 6 months ago and one alleged comment specifically contains an Errata entry from one of the authors showing that the article was corrected long before Masucci's baseless PubPeer Demand Letter.

22. None of the PubPeer Claims, moreover, contain "strong evidence," as PubPeer requires, to support any of the allegations Temple now asserts.

23. Also, Masucci did not explain how or why these papers, which have been identified on PubPeer for months and corrected in one case, are now being raised against me.

24. Nevertheless, in her PubPeer Demand Letter Masucci demanded that I again preserve documents and warned any failure to do so might constitute misconduct.

25. Masucci also notified me that "Temple University will identify a time to hold an initial discussion of the specific allegations once the records you provide have been reviewed."

26. Notably, Temple did not appear to conduct any "preliminary assessment" investigation as it also failed to do with the other "inquiry/investigation" at issue in this case.

27. Further, Temple did not identify any outside counsel that assisted it with the unspecified "preliminary assessment."

28. In contravention of Temple's own Creative Work Policy, at no time up to and including the filing of the original Complaint in this case (or to this very day) was I ever formally notified by Temple or its Integrity Officer (1) in writing, that an Inquiry Committee was to be convened to consider an allegation of misconduct, (2) informed of the nature of the allegation,

4

(3) provided a copy of the Creative Work Policy, or (4) notified that he will have the opportunity to be interviewed by and present evidence to the Inquiry Committee. *See* Temple's Creative Work Policy at Procedures, Art. I.B.1.

29. By letter dated January 22, 2021, I, through my counsel, responded to each purported allegation in the PubPeer Demand Letter, denouncing, among other things, Temple's continued failure to identify the specific basis on which Temple was pursuing documents and information against me. My "Response Letter" is attached to the Motion as Exhibit "C."

30. Through my counsel, I specifically demanded to know whether Temple was acting pursuant to an Inquiry or Investigation under the Creative Work Policy.

31. Through my counsel, I also demanded to know whether any allegation existed outside of the PubPeer Claims.

32. Further, through my counsel, I specifically detailed my role, such as it was, in each of the 9 papers identified by Temple, noting that for 5 of the papers, I merely edited the text of certain sections for a non-native English speaking author.

33. I provided no data from my laboratory, analyzed no data for the paper, and did not design or oversee any of the experiments described in them.

34. In response, Temple merely acknowledged receipt of my refutations and stated that it "will respond in due course."

35. Until Mr. Szabo's email dated August 13, 2021, neither I nor my legal counsel had heard or received anything from Temple concerning these so-called PubPeer Claims.

36. In the meantime since my counsel's January 22, 2021 Response Letter, I filed the original Complaint in this action on February 12, 2021, was the subject of Defendants' ill-conceived motion to stay discovery on May 4, 2021, which was denied on May 11, 2021, filed an

5

Amended Complaint on June 1, 2021, and most significantly, served discovery – properly under the Federal Rules of Civil Procedure – on Defendants on August 4, 2021.

37. Temple's Discovery Demands Email is an obvious retaliatory move for my discovery requests and clearly an effort to gain an unfair advantage in the litigation.

38. Temple's lawyer, Mr. Szabo, did not provide any copy of the Discovery Demands Email to my litigation (or personal) counsel but rather specifically directed me not to "discuss this matter with anyone[.]"

39. Additionally, I have learned that Temple has contacted **numerous** other non-party witnesses with the same or substantially similar notice, despite its admonition to me to tell no one about Temple's efforts (all without any notice to my counsel).

40. Mr. Szabo, Temple's lawyer, demanded that I, among other demands, give Temple and its other unidentified interrogators a tour of my research facilities, "provide access to records, introduce to others on the research team . . . , and provide information and access to other areas or devices where such records exist." *See* Discovery Demands Email at 1.

41. Through its Discovery Demands Email and the things Temple's lawyer is mandating that I must do, Temple is attempting to gain an unfair and prejudicial advantage in the lawsuit I filed by demanding that I appear, without counsel or any reasonable opportunity to prepare, for interrogation, production of documents, and disclosure of my own work product, documents and confidences so it can have unfettered control and access to its adversary, me, outside the jurisdiction of this Court.

42. Temple's demand is unprecedented in my experience.

43. Without the Court's issuance of an injunction stopping Temple's conduct here, I will be severely prejudiced, risking highly invasive and controlling discovery procedures by

Temple without any counsel present, opportunities to prepare, or guidance of my litigation counsel.

44. Accordingly, I ask the Court to immediately restrain and enjoin Temple from engaging in this sweeping discovery against me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my current knowledge, information and belief.

Dated: August 16, 2021                     /s/ Steven Houser*
                                              Steven Houser, Ph.D., FAFA

*Original signature of Dr. Houser will be submitted, but due to the emergent nature of the accompanying Motion, there was not sufficient time to acquire a "wet" signature.