# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN HOUSER, PH.D., FAHA,<br>　　　　Plaintiff, | : | No. 2:21-CV-00676 |
| vs. | : | |
| TEMPLE UNIVERSITY | : | |
| and | : | |
| ARTHUR M. FELDMAN, MD, PHD, | : | |
| 　　Defendants. | : | |

# O R D E R

**AND NOW**, this _____ day of _____ 2021, after consideration of Defendant Temple University's Motion to Dismiss Plaintiff's Amended Complaint [Dkt. 20], any response thereto, and any reply in support thereof, it is **ORDERED** that the Motion is **GRANTED**. Count I and Counts III-X[1] in Plaintiff's Amended Complaint against Temple University are **DISMISSED WITH PREJUDICE**.

**BY THE COURT:**

_____
Hon. Wendy Beetlestone

---

[1] Counts III-X of the Amended Complaint comprise only seven (7) total Counts, as there is no "Count VIII" pled.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN HOUSER, PH.D., FAHA, | : | |
| Plaintiff, | : | No. 2:21-CV-00676 |
| | : | |
| vs. | : | Judge Beetlestone |
| | : | |
| TEMPLE UNIVERSITY | : | Electronically Filed |
| | : | |
| and | : | |
| | : | |
| ARTHUR M. FELDMAN, MD, PHD, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANT TEMPLE UNIVERSITY'S
## MOTION TO DISMISS COUNT I AND COUNTS III-X OF
## PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE

For the reasons set forth in the Memorandum of Law filed concurrently with this Motion to Dismiss (the "Motion"), Defendant Temple University ("Defendant" or the "University") moves to dismiss with prejudice Count I and Counts III-X[2] the Amended Complaint of Plaintiff Steven Houser ("Plaintiff" or "Houser") as to the University pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.

---

[2] Counts III-X of the Amended Complaint comprise only seven (7) total Counts, as there is no "Count VIII" pled.

Respectfully submitted,

**SAUL EWING ARNSTEIN & LEHR LLP**

Date: November 17, 2021 s/ *James A. Keller*

James A. Keller, Esquire/78955
Darius C. Gambino/83496
Carolyn A. Pellegrini/307026
Saul Ewing Arnstein & Lehr LLP
1500 Market Street
Philadelphia, PA 19102
(215) 972-1964
james.keller@saul.com
darius.gambino@saul.com
carolyn.pellegrini@saul.com

*Attorneys for Defendant Temple University*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEVEN HOUSER, PH.D., FAHA,<br>        Plaintiff, | : <br>: <br>:   No. 2:21-CV-00676<br>: |
| vs. | :   Judge Beetlestone<br>: |
| TEMPLE UNIVERSITY | :   Electronically Filed<br>: |
| and | : <br>: |
| ARTHUR M. FELDMAN, MD, PHD, | : <br>: |
|     Defendants. | : <br>: |

**DEFENDANT TEMPLE UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS COUNT I AND COUNTS III-X OF PLAINTIFF'S
AMENDED COMPLAINT WITH PREJUDICE
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

**Table of Contents**

Page

I.   INTRODUCTION.................................................................................................................... 1

II.  ARGUMENT ......................................................................................................................... 1

   A.   APPLICABLE LEGAL STANDARD.................................................................................... 1

   B.   COUNT III MUST BE DISMISSED WITH PREJUDICE............................................................ 2

     1.   Any PUTSA claim is time-barred................................................................................. 2

     2.   The PUTSA Claim Should Also Be Dismissed Because There is No Trade Secret. ..... 5

   C.   COUNT I MUST BE DISMISSED WITH PREJUDICE. ........................................................... 5

     1.   The Creative Work Policy and Inventions and Patents Policy are not contracts............ 6

     2.   Houser does not plausibly plead a breach.................................................................... 7

   D.   COUNT VI MUST BE DISMISSED WITH PREJUDICE .......................................................... 9

   E.   COUNT X MUST BE DISMISSED WITH PREJUDICE .......................................................... 11

   F.   COUNT IV MUST BE DISMISSED WITH PREJUDICE ......................................................... 12

   G.   COUNT IX MUST BE DISMISSED WITH PREJUDICE ......................................................... 13

   H.   COUNT VII MUST BE DISMISSED WITH PREJUDICE ....................................................... 14

   I.   COUNT V MUST BE DISMISSED WITH PREJUDICE........................................................... 14

III. CONCLUSION .................................................................................................................... 15

<u>**TABLE OF AUTHORITIES**</u>

**FEDERAL CASES**

*Acurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494 (E.D. Pa. 2014)....................................11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................1, 2, 14

*Berger & Montague, P.C. v. Scott & Scott, LLC*, 153 F. Supp. 2d 750 (E.D. Pa. 2001)..............10

*Blue Gentian v. Tristar Products, Inc.*, 434 F.Supp.3d 203 (D.N.J. 2020) .................................10

*Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352 (Fed. Cir. 2004)..............................................10

*Geesey v. Stryker Corp.*, No. 09-2988, 2010 WL 3069630 (E.D. Pa. Aug. 4, 2010) .....................2

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297 (3d Cir. 2003) ........................11

*Herley Indus., Inc. v. R Cubed Eng'g, LLC*, No. 5:20-CV-02888, 2021 WL 229322 (E.D. Pa. Jan. 22, 2021) ......................................................................................................................12, 13

*In re Nyuyen Vu*, 497 B.R. 462 (Bankr. E.D. Pa. 2013) ..............................................................14

*Jazz Pharm., Inc. v. Synchrony Grp.*, LLC, 343 F. Supp. 3d 434 (E.D. Pa. 2018)........................5

*Kaymark v. Bank of Am., N.A.*, 783 F.3d 168 (3d Cir. 2015) ........................................................5

*Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273 (E.D. Pa. 2000) ................................6

*Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523 (M.D. Pa. 2018) .......................................2

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) ........................................................................1

*Mercante v. Preston Trucking Co.*, No. 96-cv-5904, 1997 WL 288614 (E.D. Pa. May 21, 1997).7

*Pollock v. Energy Corp. of Am.*, Civ. No. 10-1553, 2011 WL 5977422 (W.D. Pa. Nov. 29, 2011) ...................................................................................................................................10

*Raines v. Haverford Coll.*, 849 F. Supp. 1009 (E.D. Pa. 1994)...........................................1, 6, 8, 9

*Rossi v. Sun Refining & Marketing Corp.*, No. CIV. A. 94-3037, 1995 WL 12056 (E.D. Pa. Jan. 11, 1995) ..................................................................................................................................7

*Ruby v. Fed. Express*, No. 92–2790, 1992 WL 229877 (E.D. Pa. Sept. 8, 1992) .........................8

*Sweeney v. St. Joseph's Hosp.*, 769 F. Supp. 747 (M.D. Pa. 1991), *aff'd,* 980 F.2d 724 (3d Cir. 1992) ...........................................................................................................................8

*Webster v. LLR, Inc.*, No. 2:17-CV-225, 2018 WL 10230741 (W.D. Pa. Aug. 20, 2018)............14

39242404.6

*WesternGeco v. Ion Geophysical Corp.*, No. 09-cv-1827, 2009 WL 3497123 (S.D. Tex. Oct. 28, 2009) .................................................................................................................4, 5

*Williams v. W. Wayne Sch. Dist.*, No. 3:12CV2074, 2013 WL 4718920 (M.D. Pa. Sept. 3, 2013) ...........................................................................................................................................11

*Zirvi v. Flatley*, 433 F. Supp. 3d 448 (S.D.N.Y. 2020).............................................................4, 5

**STATE CASES**

*Buckzek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122 (Pa. Super. Ct. 1987) .......................9

*Martin v. Capital Cities Media, Inc.*, 511 A.2d 830 (Pa. Super. Ct. 1986) ...................................7

*Ruzicki v. Catholic Cemeteries Ass'n of Diocese of Pittsburgh*, 610 A.2d 495 (Pa. Super. Ct. 1992) ............................................................................................................................................7

*Styer v. Hugo*, 619 A.2d 347 (Pa. Super. Ct. 1993), *aff'd*, 637 A.2d 276 (Pa. 1994)...................14

**FEDERAL STATUTES**

Defend Trade Secrets Act ................................................................................................1, 5, 12

Federal Rule of Civil Procedure 12(b)(6) .......................................................................... passim

**STATE STATUTES**

Pennsylvania Uniform Trade Secrets Act........................................................................... passim

39242404.6

## I. INTRODUCTION

Defendant Temple University (the "University") filed a Motion to Dismiss Counts I-X[3] of the original Complaint filed by Plaintiff Dr. Steven Houser ("Houser') for failure to state a claim. *See* Dkt. 9. Houser thereafter filed an Amended Complaint [Dkt. 20]. By Court Order [Dkt. 31], the Defendants then commenced a two-stage process regarding their motions to dismiss the Amended Complaint. The Defendants first filed motions to dismiss only Count II of the Amended Complaint (Misappropriation of Trade Secrets under the Defendant Trade Secrets Act ("DTSA")) *See* Dkt. 34, 35. Depending on the outcome of those motions, the civil action could have been dismissed entirely, or additional motion to dismiss briefing would be permitted on the remaining counts.

The Court recently granted the Motion of Defendant Arthur M. Feldman ("Feldman") to Dismiss Count II of the Amended Complaint *with prejudice*. *See* Dkt. 59, 60. The Court did not, however, dismiss the entirety of Count II with respect to the University, and the University timely filed a Motion for Reconsideration, which the Court denied on November 12, 2021. *See* Dkt. 61, 62. The University now moves to dismiss the remaining Counts in the Amended Complaint.

## II. ARGUMENT

### A. Applicable Legal Standard.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that on its face is insufficient to state a claim upon which relief can be granted. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[3] Again, there is no "Count VIII," so there are nine (9) total Counts levied against the University in the Amended Complaint.

570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" in defeating a motion to dismiss. *Geesey v. Stryker Corp.*, No. 09-2988, 2010 WL 3069630, at *2 (E.D. Pa. Aug. 4, 2010) (quoting *Iqbal*, 556 U.S. at 678 (2009)).

**B.      Count III Must Be Dismissed With Prejudice.**

The elements of a misappropriation of trade secrets claim under the Pennsylvania Uniform Trade Secrets Act (the "PUTSA") are: "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship, (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff.'" *Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 540 (M.D. Pa. 2018) (quoting *Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 567 (3d Cir. 2003)).

**1.      Any PUTSA claim is time-barred.**

A PUTSA claim "must be brought within three years after the misappropriation was discovered or by the exercise of reasonable diligence should have been discovered." 12 Pa. C.S.A. § 5307. Houser's PUTSA claim accrued no later than February 2017, when he first became aware of the publication of the April 2015 Paper[4] that allegedly included his "Stolen Pig Materials. (Dkt. 20 at ¶ 100.) The April 2015 Paper is attached to Houser's Amended Complaint as Exhibit C. (Dkt. 20, Ex. C.) The very first page of the April 2015 Paper identifies the nine (9) listed authors,

---

[4] The April 2015 Paper, which Houser references and incorporates in his own pleading, is key to the present Motion. It is entitled " BAG3: a new player in the heart failure paradigm" and was published on April 30, 2015. (See Am. Compl., Ex. C. (Dkt. 20, Ex. C.)) Houser does not, and cannot, deny that the April 2015 Paper includes his purported trade secret "Pig Data" in Figure 4, and that such information was available to the public as of the publication date.

including Feldman. (*Id*.) Each of those authors is credited as a member of the "Temple University School of Medicine." (*Id*.) The April 2015 Paper also notes its publication "with **open access** at Springerlink.com" (emphasis added). (*Id*.) In other words, a document attached to and incorporated in Houser's own pleading confirms that the "Stolen Pig Materials" were in the possession of not only several Temple employees, but the public at large, as of April 2015. Any trade secret value that existed for the "Stolen Pig Materials" was eviscerated at that point.

Dr. Houser alleges that he did not become aware of the publication of the April 2015 Paper until February 2017 (Dkt. 20 at ¶ 92), at which point he reported the matter to Temple (*id*. at ¶ 100). Houser was ostensibly satisfied with whatever resolution was reached: "[o]ne week after Houser's complaint, Temple offered him an apology from Feldman. Houser believed that the matter was resolved…" (Dkt. 59, p. 3.) The February 2017 reporting to Temple is critical to Houser's misappropriation claim, as Houser necessarily 'knew or should have known' at that point that both Feldman and Temple had access to, and use of, the "Stolen Pig Materials". Importantly, Houser took no action against Feldman or Temple within three (3) years of the report (i.e., by February 2020), even though he knew or should have known by that point that the "Stolen Pig Materials" had been disclosed to and therefore acquired by Feldman, Temple, and the general public.

Houser's repeated references to the '807 [Patent] Application in his Amended Complaint should not change this analysis. Houser attaches to the Amended Complaint, as Exhibit D, U.S. Patent Publication 2017/0016066. (Dkt. 20, Ex. D.) This is the published version of a U.S. Patent Application first filed on January 30, 2015, also known as the '807 Application. (*Id*.) Like Exhibit C to the Amended Complaint (the April 2015 Paper), Exhibit D does not help Houser's case, but actually confirms why Houser's PUTSA claim against Temple should be dismissed on statute of

limitations grounds.  The document, published on January 1, 2017, identifies "Temple University" as the assignee of the invention, and lists Dr. Feldman and several other Temple employees as inventors.  (*Id.*)  If Houser did not actually know in 2017 of the publication of the '807 Application in his own field of study, at his own university, he certainly "should have known".

Finally, while Dr. Houser avers that he did not "discover" the '807 Patent Application until November 2020, that is immaterial: "[t]he existence of a patent application or a public patent puts parties on notice of their existence and therefore starts the clock on the limitations period."  *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 459 (S.D.N.Y. 2020) (citing *Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc*., 182 F. App'x 994, 999 (Fed. Cir. 2006) (patent applications put parties on constructive notice); *WesternGeco v. Ion Geophysical Corp*., No. 09-cv-1827, 2009 WL 3497123, at *5 (S.D. Tex. Oct. 28, 2009) ("[i]n the same way that the issuance of a patent by the PTO constitutes notice to the entire world of its existence, regardless of whether other persons take it upon themselves to examine the record, so too, by extension, do the applications published under the [Patent Cooperation Treaty] constitute notice to the world of their existence …."))  Houser was on notice of the existence of the alleged misappropriation of his Pig Data in 2017, both through the publication of the '807 Application (in January 2017), and through his February 2017 complaint to Temple regarding the April 2015 Paper.  All of this further underscores the fact that Houser's misappropriation claim accrued at the latest in 2017, both with respect to Feldman and Temple.

The original Complaint in this matter was filed February 12, 2021, more than three (3) years after Houser's discovery of multiple alleged misappropriations of his putative trade secret. As such, Houser's PUTSA claim is untimely.  For this reason alone, Count III of the Amended Complaint should be dismissed.

4

### 2. The PUTSA Claim Should Also Be Dismissed Because There is No Trade Secret.

Beyond the statute of limitations issue, there is no trade secret for Houser to protect.  As Judge Rufe has noted, "although the DTSA and the PUTSA use different wording, both statutes define a "trade secret" the same way. *Jazz Pharm., Inc. v. Synchrony Grp.*, LLC, 343 F. Supp. 3d 434, 444 (E.D. Pa. 2018).  As set forth in detail in Section B.2 of the University's (second) Motion to Dismiss (Dkt. 34), Houser has failed to identify a protectable trade secret, whether under the DTSA or the PUTSA.  In short, the "Stolen Pig Materials" were disclosed to the general public in April 2015 (with the publication of the April 2015 Paper).  If that was not clear, they absolutely were disclosed through the '807 Patent Application published in January 2017: "[t]he existence of a patent application or a public patent puts parties on notice of their existence …." *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 459 (S.D.N.Y. 2020) (citing *Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc*., 182 F. App'x 994, 999 (Fed. Cir. 2006) (patent applications put parties on constructive notice); *WesternGeco v. Ion Geophysical Corp*., No. 09-cv-1827, 2009 WL 3497123, at *5 (S.D. Tex. Oct. 28, 2009) (see above).

Any "trade secret" related to the Pig Data has long been lost, in 2017 if not earlier.  Houser cannot reseal Pandora's Box.  For this reason, too, Houser's PUTSA claim must be dismissed *with prejudice*, as any amendment to this claim would be futile.

### C. Count I Must Be Dismissed With Prejudice.

To state a claim for breach of contract under Pennsylvania law, a complaint must set forth non-conclusory allegations supported by cognizable facts demonstrating: "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015) (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)).  Houser cites to two (2)

documents in the Amended Complaint, the (Temple) Creative Work Policy and the (Temple) Inventions Policy (Dkt. 20 at ¶¶ 92, 100.); neither one is a contract under the legal definition.

1.  **The Creative Work Policy and Inventions and Patents Policy are not contracts.**

Houser's contractual claims focus on the University's "Creative Work Policy" and "Inventions Policy."  Since Houser failed to attach these policies to the Amended Complaint, the University includes them here.  *See* <u>Ex. A</u> (Temple University "Inventions and Patents" Policy) and <u>Ex. B</u> (Temple University "Policy on Misconduct in Research and Creative Work").

The Policy on Misconduct in Research and Creative Work (the "Creative Work Policy") is part of the University Employee Manual.[5]  *See* <u>Ex. C</u> (Temple University "Employee Manual") at Section 11.20.[6]  Importantly, the Employee Manual expressly provides that "[n]othing in this Employee Manual constitutes a contract, express or implied."  *See* <u>Ex. C</u>, at p. 2.

It is well-settled that explicit disclaimers of contract formation in an employee handbook preclude a breach of contract claim.  *See Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273, 280 (E.D. Pa. 2000) (applying Pennsylvania law and holding that "[t]his explicit disclaimer of the formation of a contract nullifies plaintiff's claim for breach of contract."); *Raines v. Haverford Coll.,* 849 F. Supp. 1009, 1011-12 (E.D. Pa. 1994) (employee handbook and employee

---

[5]  The Policy on Misconduct in Research and Creative Work is included as part of the Employee Manual in an abbreviated form with the reference by incorporation of the full policy provided as follows:  "Violations of this policy will be determined according to the processes and procedures described more fully in Temple University's Policy on Misconduct in Research and Creative Work at http://policies.temple.edu."  *See* <u>Ex. C</u> at page 55.

[6]  The Employee Manual, Creative Work Policy and Inventions Policy are attached hereto as Exs. A-C. "The Third Circuit has held that review of documents attached as exhibits to a motion to dismiss is proper where the allegations in the complaint are based on such documents and the plaintiff has failed to attach them to the complaint." *Raines v. Haverford Coll.*, 849 F. Supp. 1009, 1012 n.1 (E.D. Pa. 1994).

39242404.6

policies not contractual); *Ruzicki v. Catholic Cemeteries Ass'n of Diocese of Pittsburgh*, 610 A.2d 495, 498 (Pa. Super. Ct. 1992) (employee handbook did not establish contractual obligations where it contained disclaimer stating same). Accordingly, Houser is precluded from bringing a breach of contract claim for any alleged breach of the Creative Work Policy.

Likewise, the Inventions and Patents Policy is not a contract. Pennsylvania courts and federal courts applying Pennsylvania contract law have repeatedly held that employee manuals and employee policies may *only* form the basis of a contract if the employee shows that the employer affirmatively intended that it do so. *See, e.g.*, *Mercante v. Preston Trucking Co.*, No. 96-cv-5904, 1997 WL 288614, at *2 (E.D. Pa. May 21, 1997) (granting judgment on the pleadings in favor of employer where handbook and policies did not contain a clear indication that a contract was intended); *Martin v. Capital Cities Media, Inc.*, 511 A.2d 830, 840–41 (Pa. Super. Ct. 1986) (holding that an employee handbook and policies were not contracts); *Rossi v. Sun Refining & Marketing Corp.*, No. CIV. A. 94-3037, 1995 WL 12056, at *5 (E.D. Pa. Jan. 11, 1995) (dismissing breach of contract claim because policy did not provide clear intent by the employer to be bound to policy as contract). Houser does not make a single allegation evidencing a "clear intent" by the University to be bound by the Inventions and Patent Policy. Houser fails to provide any well-pleaded allegations of the existence of a contract, either in the Creative Work Policy or the Inventions and Patents Policy. His breach of contract claim fails at the first element.

### 2. Houser does not plausibly plead a breach.

Houser alleges that the University breached the Creative Work Policy and the Inventions Policy "through its improper (and/or unauthorized or baseless) Inquiries/Investigations and failures to act upon Dr. Houser's complaints about the Stolen IP and defamatory statements disseminated by Dr. Feldman[.]" (Dkt. 20 at ¶ 263.) However, even taking all of the factual averments in the Amended Complaint as true, the University did not breach either policy.

7

Dr. Houser asserts breaches under the Creative Work Policy as follows:

- "There is no authorization under the Creative Work Policy for the Integrity Officer or Temple or anyone acting on their behalf to require an interrogation or document production pursuant to a 'preliminary assessment.'" (*Id.* at ¶ 137.)

- "Nothing in the Creative Work Policy permits such a wide-ranging investigation to constitute a 'preliminary assessment.'" (*Id*. at ¶ 165.)

- "The Creative Work Policy does not require any faculty member or employee to submit to interrogation or document demands under any alleged 'preliminary assessment.'" (*Id*. at ¶ 171.)

Put simply, Houser pleads the *nonexistence* of certain terms as creating a contractual obligation. This makes no sense. The reality is that the Creative Work Policy does not *prohibit* questioning or document productions, nor does it describe or limit the scope of the preliminary assessment in any way. Houser's inability to point to *any* specific provision of the Creative Work Policy that the University allegedly breached also requires dismissal of Count I. Without specifying "which provisions of the employee [policy] defendant breached", a plaintiff cannot maintain a breach of contract claim. *Raines*, 849 F. Supp. 1009 at 1013; *see also Sweeney v. St. Joseph's Hosp.*, 769 F. Supp. 747, 751 (M.D. Pa. 1991), *aff'd,* 980 F.2d 724 (3d Cir. 1992); *Ruby v. Fed. Express*, No. 92–2790, 1992 WL 229877, *2 (E.D. Pa. Sept. 8, 1992) (plaintiff's breach of contract claim dismissed where plaintiff failed to identify specific "policies, procedures, and updates" that allegedly created a contract between himself and employer).

Houser alternatively cites the notification requirements under Article I.B.1. of the Creative Work Policy to support his contention that the University breached a contractual obligation. (Dkt. 20 at ¶ 197.) However, this notification is only required under "stage 2: the inquiry stage" of the investigative process[7]; there are no such requirements for the preliminary assessment stage and

---

[7] The Court has previously held in ruling on Houser's Motion for Protective Order that the University is still in Stage 1 of the process. (Dkt. 57 at ¶ p. 6.)

39242404.6

Dr. Houser does not plead otherwise. *See* Ex. A at page 9. Houser similarly alleges that the University violated the Creative Work Policy, Section J, by not abiding by the "timing of inquiries and investigations." (Dkt. 20 at ¶ 196.) Again, the time frames in the Creative Work Policy that he cites only apply to "inquiries and investigations", and there is no set time frame in the Policy for the "preliminary assessment" stage. In sum, Houser has not pled any actual breach of the Creative Work Policy, even if such document were a 'contract' (which it is not).

Count I of the Amended Complaint also identifies the "Inventions Policy," and suggests a breach by the University. The Amended Complaint is devoid, however, of any specific allegations as to how the University violated the Inventions Policy. The Amended Complaint also fails to identify any specific provisions of the Inventions Policy that were allegedly breached. As detailed above, failure to specify "which provisions of the employee [policy] defendant breached" is fatal to breach of contract claims. *Raines*, 849 F. Supp. at 1013.

For all of these reasons, Count I fails as a matter of law, and should be dismissed with prejudice.

### D. Count VI Must Be Dismissed With Prejudice

Houser's "Accounting" claim is pled to be "in accordance with his contractual rights." (Dkt. 20 at pg. 49, "WHEREFORE " clause.) This accordingly is a request for a legal accounting under Pennsylvania Law, which is "merely an incident to a proper assumpsit claim." *Buckzek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1123 (Pa. Super. Ct. 1987). To "establish a right to an accounting in a breach of contract case," a plaintiff must plead that:

(1) **there was a valid contract**, express or implied, between the parties whereby the defendant

(a) received monies as agent, trustee or in any other capacity **whereby the relationship created by the contract imposed a legal obligation upon the defendant to account to the plaintiff for monies received by the defendant**, or

> (b) if the relationship created by the contract between the plaintiff and defendant created a legal duty upon the defendant to account and the defendant failed to account and the plaintiff is unable, by reason of the defendant's failure to account, to state the exact amount due him, and

> (2) that the defendant breached or was in dereliction of his duty under the contract.

*Pollock v. Energy Corp. of Am.*, Civ. No. 10-1553, 2011 WL 5977422, at *1–2 (W.D. Pa. Nov. 29, 2011) (emphases added); *Berger & Montague, P.C. v. Scott & Scott, LLC*, 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001). The predicate for a legal accounting is the existence of a valid contract between the parties. As described at length above in Section II(C), neither the Creative Work Policy nor the Inventions Policy are contracts, and Houser has failed to allege any specific breach of either policy.

Even if this Court were to find that the Creative Work Policy were a binding contract between the University and Houser, it is certainly not a contract under which the University had a legal duty to "account" to Houser. While the University may have a duty to account to Houser for royalties resulting from his "inventions" under the Inventions Policy, Dr. Houser has failed to allege any facts that would tend to show that he was an inventor of the '807 Application[8] under controlling legal precedent. *See Blue Gentian v. Tristar Products, Inc.*, 434 F.Supp.3d 203, 214-215 (D.N.J. 2020) ("a person can be a joint inventor only if he or she contributes to the conception of the claimed invention"); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004). Houser's putative claim for a legal accounting in Count VI fails, and must be dismissed with prejudice.

---

[8] The "'807 Application" is defined by Houser in the Amended Complaint as U.S. Patent Application No. 15/115,807, titled "BAG3 As a Target for Therapy of Hearth Failure."

### E.    Count X Must Be Dismissed With Prejudice

Houser alleges that the University and Dr. Feldman conspired with one another to deprive him of his ownership and monetary rights to the "Stolen IP." (Dkt. 20 at ¶ 342.) Houser's claim for civil conspiracy fails as a matter of law because his claim is barred by the intracorporate conspiracy doctrine.

The intracorporate conspiracy doctrine provides that "an entity cannot conspire with one who acts as its agent." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003). In other words, "no claim for conspiracy can arise between an entity and its employees." *Williams v. W. Wayne Sch. Dist.*, No. 3:12CV2074, 2013 WL 4718920, at *8 (M.D. Pa. Sept. 3, 2013) (dismissing civil conspiracy claim and ruling that "the intracorporate conspiracy doctrine prevents plaintiff from stating a conspiracy claim against the School District based upon the actions of those serving as its agents"). Houser specifically avers that the University and its employee, Dr. Feldman, have "acted in concert with one another" to deprive him of his supposed rights in the "Stolen IP." (Dkt. 20 at ¶ 342.) This is exactly the type of claim barred by the intracorporate conspiracy doctrine.

There is an ongoing question under Pennsylvania law as to whether an exception to the intracorporate conspiracy doctrine can exist when an employee has "acted for their sole personal benefit," which is presumably why Houser pleads in Paragraph 343 that Dr. Feldman acted "for his own personal benefit." *Acurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 514 (E.D. Pa. 2014), (citations omitted). This conclusory sentence fragment alleging Dr. Feldman acted "for his sole personal benefit" is belied by the balance of Houser's Amended Complaint, where he specifically and repeatedly contends that the University and Dr. Feldman acted together. Moreover, as Judge Pratter noted in *Acurso*, "[t]he personal benefit exception to the intracorporate conspiracy doctrine is poorly defined, if in fact it exists," and "at least one panel of the

Pennsylvania Superior Court, in a nonprecedential decision, has opined that no such 'exception' to the intracorporate conspiracy doctrine 'is recognized by Pennsylvania state courts.'" *Id.* at 514-15 (citing *Lily v. Boots & Saddle Riding Club*, No. 57 CD 2009, 2009 WL 9101459, at *6 (Pa. Commw. Ct. July 17, 2009)). The intracorporate conspiracy doctrine bars Houser's civil conspiracy claim.

Moreover, without a "viable underlying substantive claim, a civil conspiracy claim may not lie." *Acurso*, 23 F. Supp. 3d at 512. For all of the reasons outlined above, Houser has no viable underlying substantive claim to support his civil conspiracy cause of action. For this reason, too, Count X must be dismissed, with prejudice.

### F. Count IV Must Be Dismissed With Prejudice.

Houser's "cause of action" for a specific injunction should be dismissed with prejudice because injunctions are a form of relief, not a cause of action or separate count. *Herley Indus., Inc. v. R Cubed Eng'g, LLC*, No. 5:20-CV-02888, 2021 WL 229322, at *5–6 (E.D. Pa. Jan. 22, 2021). In *Herley*, a case which similarly alleged violations of the DTSA, PUTSA, and breach of contract, Judge Leeson **dismissed** the plaintiff's causes of action for injunctive relief with prejudice as a matter of law, explaining:

> In its Complaint, [plaintiff] alleges separate Counts entitled "Preliminary Injunctive Relief," Count I, and "Permanent Injunctive Relief," Count II. In response, [defendant] argues for dismissal of these claims, applying a traditional injunction analysis. Notwithstanding [plaintiff's] allegations and [defendant's] application of a traditional injunction analysis, preliminary and permanent injunctions are a form of relief, not a claim to be pleaded as a separate count. *In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 365 (M.D. Pa. 2013) ("[I]njunctive relief is a remedy, not an independent cause of action.").

This exact analysis applies here, and Count IV should be dismissed with prejudice.

### G. Count IX[9] Must Be Dismissed With Prejudice.

To state a claim for conversion of intellectual property, a plaintiff must allege that: (1) it owns a trade secret; (2) the trade secret was communicated to the defendant within a confidential relationship; and (3) the defendant used the trade secret to the plaintiff's detriment. *Teva Pharm. USA, Inc.*, 291 F. Supp. 3d at 680; *see also Herley Indus., Inc.*, 2021 WL 229322, at *8. Houser fails to plausibly allege the essential elements of this claim.

The Amended Complaint does not sufficiently plead a claim for conversion. First, for all of the reasons detailed above, and in the University's (second) Motion to Dismiss (Dkt. 34), Houser does not adequately allege that he owned a "trade secret." The "Stolen Pig Materials" were unquestionably disclosed to the public in April 2015, and again in 2017. Second, Houser fails to allege that the "Stolen IP" was ever communicated to the University within the context of a "confidential relationship." This element of a conversion claim requires that the plaintiff, anticipating some ongoing working relationship, *himself* shares a trade secret with the defendant, but the defendant then wrongfully converts that secret to plaintiff's detriment. *Id.* at *8. Houser, of course, avers the opposite – he contends that he never intentionally shared his trade secrets with either Feldman or the University. Additionally, there was nothing remotely "confidential" about Houser's "Stolen Pig Materials" once they were disclosed to the public in April 2015 (in the April 2015 Paper) and then again in the '807 Patent Application in January 2017. Houser's conversion claim should be dismissed with prejudice.

---

[9] Dr. Houser labels his conversion count as "Count IX." However, there is no "Count VIII" in the Amended Complaint (it skips from "Count VII" to "Count IX"). To avoid confusion, Temple University will refer to Dr. Houser's claim for "Conversion" as Count IX.

### H.    Count VII Must Be Dismissed With Prejudice.

Houser's unjust enrichment claim also should be dismissed with prejudice.  To state a claim for unjust enrichment, Houser is required to plead three things: 1) he conferred a benefit on Defendants; 2) there was an appreciation of such benefits by Defendants; and 3) there has been an acceptance and retention of such benefits under such circumstances that it would be inequitable for Defendants to retain the benefit without payment of value.  *Styer v. Hugo*, 619 A.2d 347 (Pa. Super. Ct. 1993), *aff'd*, 637 A.2d 276 (Pa. 1994) (citations omitted).

Houser's claim fails at the first element.  Houser cannot plausibly plead that he "conferred a benefit" on anyone, let alone the University; instead, he spends dozens of pages arguing that the "benefit" was stolen from him and shared against his will, and without his knowledge.   In this context, Houser's conclusory statement that he "conferred benefits" is insufficient to state a claim for unjust enrichment. *See Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion).  Count VII should be dismissed, with prejudice.

### I.    Count V Must Be Dismissed With Prejudice.

Finally, Count V must be dismissed with prejudice.  Houser improperly pleads constructive trust as a separate cause of action from unjust enrichment.  Constructive trust is not a cause of action, but an equitable remedy for unjust enrichment.  Where a plaintiff improperly alleges separate counts for unjust enrichment and constructive trust, courts routinely construe them as a single unjust enrichment claim, with constructive trust as a requested remedy. *See Webster v. LLR, Inc.*, No. 2:17-CV-225, 2018 WL 10230741, at *12 (W.D. Pa. Aug. 20, 2018) ("Plaintiffs' claims based upon a breach of a constructive trust is bound for the same fate [as their unjust enrichment claim]. Courts in Delaware, Massachusetts, Minnesota, New Jersey, New York, Oregon, and Pennsylvania have all held that constructive trust is a remedy, not a claim."); *In re Nyuyen Vu*, 497

B.R. 462, 464–65 (Bankr. E.D. Pa. 2013) (interpreting plaintiff's "constructive trust" count as one in the same as a count for "unjust enrichment").  Houser's constructive trust "claim" is not a claim at all, but instead a remedy – and it must be dismissed for the same reasons discussed above in Section II(H)  with respect to his unjust enrichment claim.

## III.    CONCLUSION

For all the foregoing reasons, Defendant Temple University respectfully requests that this Court dismiss Counts I and Counts III-X the Amended Complaint, with prejudice, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

SAUL EWING ARNSTEIN & LEHR LLP

Date:  November 17, 2021

*/s/  James A. Keller*
James A. Keller, Esquire/78955
Darius C. Gambino/83496
Carolyn A. Pellegrini/307026
Saul Ewing Arnstein & Lehr LLP
1500 Market Street
Philadelphia, PA 19102
(215) 972-1964
james.keller@saul.com
darius.gambino@saul.com
carolyn.pellegrini@saul.com

*Attorneys for Defendant Temple University*

39242404.6

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion to Dismiss and Memorandum of Law were served on the following counsel via electronic mail:

David M. Burkholder, Esquire
Courtney A. Keaveney, Esquire
460 Norristown Road, Suite 110
Blue Bell, PA 19422
dburkholder@wispearl.com
ckeaveney@wispearl.com

*Attorneys for Plaintiff Steven Houser, PH.D., FAHA*

Michael J. Fortunato, Esquire
Rachael Luken Carp, Esquire
Rubin, Fortunato & Harbison P.C.
10 South Leopard Road
Paoli, PA 19301
mfortunato@rubinfortunato.com
rcarp@rubinfortunato.com

*Attorneys for Defendant Arthur Feldman, MD, Ph.D.*

Date: November 17, 2021

s/ *James A. Keller*
James A. Keller, Esquire/78955
Saul Ewing Arnstein & Lehr LLP
1500 Market Street
Philadelphia, PA 19102
(215) 972-7777
james.keller@saul.com

*Attorney for Defendant Temple University*