

# TEMPLE UNIVERSITY
## BOARD OF TRUSTEES
### POLICIES AND PROCEDURES MANUAL

**Title:** Policy on Misconduct in Research and Creative Work
**Policy Number:** 02.54.01
**Effective Date:** May 14, 2002
**Issuing Authority:** Board of Trustees

**Scope of Policy**

**I.  General Statement of Policy**

Temple University is committed to generating and disseminating knowledge and to protecting traditional principles of academic freedom. Temple University further recognizes the importance of protecting the lives and rights of all who are involved in those processes and of maintaining a relationship of trust within the broader academic, research and social communities. By this policy, Temple University requires that each person who engages in or supervises research or creative work be responsible for conducting these activities in an ethical manner.

A determination of a violation of this policy may constitute adequate or just cause for disciplinary action up to and including dismissal.

**II.  Summary of Process and Procedures (described more fully in the Procedures section, below)[1]**

A.  Process for Members of Group 1

　　1.  Upon receiving information that a violation of the policy is alleged to have occurred, the Integrity Officer preliminarily will assess whether sufficient information exists to refer the matter to an Inquiry Committee. In the case of members of Group 1, the Inquiry Committee will be the Faculty Senate Personnel Committee ("Personnel Committee").

　　2.  If the Integrity Officer reports the matter to the Personnel Committee, the Personnel Committee will determine (1) whether there is sufficient evidence of actionable misconduct to warrant an Investigation, and (2) if

---

[1] Those individuals subject to this policy consist of two groups. Group 1 consists of tenured faculty members, plus those untenured faculty members who are not covered by the Temple/TAUP Contract. Group 2 consists of those untenured faculty members who are covered by the Temple/TAUP Contract and all others (except those members of Group 1) to whom this policy applies.

1

so, whether in its view, formal proceedings to consider dismissal or discipline should be instituted. The Personnel Committee, when it deems it appropriate, may designate a subcommittee to preliminarily collect and evaluate the evidence.

3. The President, after reviewing the findings and recommendation of the Personnel Committee, will decide whether to institute formal proceedings for discipline up to and including dismissal.

4. If the President institutes formal proceedings, the Personnel Committee will appoint an Investigation Committee (Hearing Committee) to determine whether actionable misconduct occurred and to recommend appropriate action to the President.

5. The President or the President's Designee will decide what action(s) to take.

B. Process for Members of Group 2

1. Upon receiving information that a violation of this policy is alleged to have occurred, the Integrity Officer preliminarily will assess whether sufficient information exists to refer the matter to an Inquiry Committee. In the case of members of Group 2, the Integrity Officer will appoint the members of the Inquiry Committee.

2. If the Integrity Officer reports the matter to an Inquiry Committee, the Inquiry Committee will determine whether there is sufficient evidence of actionable misconduct to warrant an Investigation and will report its findings to the President or the President's Designee.

3. The President or the President's Designee will appoint an Investigation Committee, if appropriate.

4. If convened, the Investigation Committee will determine whether actionable misconduct occurred and will recommend appropriate action to the President or the President's Designee.

5. The President or the President's Designee will decide what action(s) to take.

### III. Scope of Applicability

This policy applies to all faculty members. This policy also applies to all employees, students and others who are involved with or are working on research or creative work funded by government agencies that require the University to establish policies and procedures for investigating instances of alleged misconduct.

Allegations that a person not subject to this policy committed misconduct in research or creative work will be handled according to other relevant University policies and procedures.

**Definitions**

A.  *Allegation* means any written or oral statement or other indication of possible misconduct, as defined in this policy, clearly communicated to the Integrity Officer.

B.  *Complainant* means a person who makes an allegation of misconduct.

C.  *Faculty Handbook* means the document titled the "Faculty Handbook" contained in the "Faculty Guide".  All specific references to the Faculty Handbook are to the version contained in the Faculty Guide published in August 1993.  If the Faculty Handbook changes in ensuing years, the then-current version of the Faculty Handbook governs.

D.  *Good faith* means the honest belief that misconduct may have occurred.  An allegation is not made in good faith if it is made with reckless disregard for or in willful ignorance of facts that would disprove the allegation.

E.  *Group 1* means all tenured faculty members, plus those untenured faculty members who are not covered by the Temple/TAUP Contract.

F.  *Group 2* means those untenured faculty members who are covered by the Temple/TAUP Contract and all others (except those members of Group 1) to whom this policy applies.

G.  *Inquiry* means the process of gathering information and conducting an initial fact-finding to determine (1) whether there is sufficient evidence of actionable misconduct to warrant an Investigation, and (2) if so, whether, in its view, formal proceedings to consider dismissal or discipline should be instituted.

H.  *Inquiry Committee* means, with respect to members of Group 1, the Personnel Committee of the Temple University Faculty Senate ("Personnel Committee").  With respect to members of Group 2, the Inquiry Committee is a committee appointed by the Integrity Officer to conduct an Inquiry.

I.  *Integrity Officer* means the University's chief research officer, as designated by the President.

J.  *Investigation* means the examination and evaluation of all relevant facts to determine whether the Respondent committed actionable misconduct.

K. *Investigation Committee* means, with respect to members of Group 1, a Hearing Committee selected and convened by the Personnel Committee to consider whether the Respondent committed actionable misconduct and, if so, whether the misconduct could constitute grounds for dismissal or discipline. With respect to members of Group 2, the Investigation Committee is a committee convened by the President or the President's Designee to determine whether the Respondent committed actionable misconduct.

L  *Misconduct* means fabrication, falsification, plagiarism, or other practices that seriously deviate from those that are commonly accepted within the research and creative communities for proposing, conducting, or reporting research or other creative work.

Various disciplines (*e.g.*, natural sciences, social sciences, humanities, medicine, law and the arts) may have their own specific ethical criteria and traditions which govern the conduct of research and creative work. Faculty members, administrators and graduate students working in those disciplines are responsible for knowing those standards and complying with them.

Misconduct includes, but is not limited to, the following:

1. Abuse of confidentiality: taking or releasing the ideas or data of others that were shared with the legitimate expectation of confidentiality; *e.g.*, stealing or disseminating ideas from others' grant proposals, award applications or manuscripts for publication when one is a reviewer for granting agencies or journals;

2. Deliberate violation of regulations: intentional failure to adhere to or to receive the approval required for work under applicable federal, state, local or University guidelines including, but not limited to, guidelines for the:

    a) protection of human subjects;
    b) protection of animal subjects;
    c) use of recombinant DNA;
    d) use of radioactive material;
    e) use of hazardous chemicals or biological materials; or
    f) compliance with laboratory safety requirements;

3. For grant-supported work, engaging in acts that would constitute actionable misconduct under definitions provided by the funding agency (*e.g.*, the Public Health Service (PHS), the National Science Foundation (NSF) or comparable granting agencies);

4. Ignoring deficiencies noted by Temple University's Environmental Health and Radiation Safety Department, or its functional equivalent;

4

5. Dishonesty in publication: knowingly publishing material that will mislead readers, *e.g.*, misrepresenting data or their origin, misrepresenting research progress or adding or deleting the names of other authors without their permission;

6. Fabrication of data: dishonesty in reporting results, including fabricating data, improperly adjusting results, acting with gross negligence in collecting or analyzing data and selectively reporting or omitting conflicting data for deceptive purposes;

7. Falsification: deliberately misrepresenting research, including the progress of research, to a research sponsor or others;

8. Interference with primary usership: unreasonable or unwarranted interference with another individual's use of equipment, supplies or physical space assigned by the University;

9. Plagiarism: taking credit for someone else's work and ideas, stealing others' results or methods, copying the writing of others without proper acknowledgment, or otherwise taking credit for the work or ideas of others; and

10. Property violations: misappropriating, stealing or destroying equipment, supplies or other information including, but not limited to, data, text, works of art or authorship or databases, which either belong to others or over which others have primary usership.

Misconduct does not include honest and reasonable error or honest and reasonable differences in interpretations or judgments of data.

These definitions and their applications are intended to be consistent with traditional principles of academic freedom and should be so interpreted by those who implement this policy, where applicable.

M. *President's Designee* means an individual designated by the President of the University. The President may assign the task of naming a President's Designee to another person. The Integrity Officer and the President's Designee may not be the same person.

N. *Respondent* means the person against whom an allegation of misconduct is directed or the person whose actions are the subject of an Inquiry or Investigation.

O. *Retaliation* means taking action which adversely affects a person's employment or other institutional status because the person reported alleged acts of misconduct or alleged inadequate institutional response thereto, or cooperated in good faith with an Inquiry or Investigation of such an allegation.

P.  *Temple/TAUP Contract* means the collective bargaining agreement entered into between Temple University and the Temple Association of University Professionals (TAUP).  All specific references are to the Temple/TAUP Contract version effective May 16, 2000.  If the Temple/TAUP Contract changes in ensuing years, the then-current version governs.

**Policy**

A.  Applicability of Policy and Procedures

This policy typically will be followed when the Personnel Committee or the Integrity Officer receives an allegation of misconduct as defined in this policy.

The Integrity Officer must approve any variations from normal procedure in advance of such variation.

B.  Responsibility to Report Misconduct

Everyone subject to this policy is expected to report observed, suspected or apparent misconduct to the Integrity Officer or to the Personnel Committee.  Failure to report observed, suspected or apparent misconduct may result in disciplinary action under this or other applicable University policies.

The Personnel Committee will promptly inform the Integrity Officer of all reports that come directly to it and will seek the Integrity Officer's input and assistance, as appropriate.  If someone is unsure whether a suspected incident falls within the definition of misconduct, he or she may call the Integrity Officer to discuss the matter informally and confidentially.  If the circumstances described by the person do not meet the definition of misconduct, the Integrity Officer may refer that person, as appropriate, to other University offices or officials with responsibility for resolving the problem.

C.  Protecting the Complainant

The Integrity Officer will monitor the treatment of Complainants with the objective of ensuring that they are not retaliated against at Temple and will review instances of alleged retaliation.

Temple will endeavor to protect the privacy of those who report misconduct, in good faith, to the maximum extent reasonably possible.  If a Complainant requests anonymity, Temple will make reasonable efforts to honor the request during the Preliminary Assessment or Inquiry.  The Complainant will be advised that if the matter proceeds to an Investigation and the Complainant's testimony is required, anonymity may no longer be guaranteed.

D. Protecting the Respondent

Inquiries and Investigations will be conducted in a manner that will ensure fair treatment and confidentiality to the Respondent to the maximum extent reasonably possible without compromising public health and safety or thoroughness in carrying out the Inquiry or Investigation.

When a Respondent appears before the Inquiry or Investigation Committee, the Respondent may bring one advisor, such as a union representative, an attorney or a colleague, to interviews or meetings on the case. The advisor will not have an active role in the Inquiry except to advise the Respondent when the Respondent is a witness.

E. Cooperation with Inquiries and Investigations

Every Temple faculty member, administrator, employee, student or other person associated with Temple shall cooperate with the Integrity Officer and other institutional officials or committees in reviewing allegations and in conducting Inquiries and Investigations. Although a Respondent must furnish research records and other information in his or her possession, the Respondent is not required to provide written or oral testimony.

F. Confidentiality

In conducting Inquiries and Investigations, confidential treatment will be afforded to all affected, to the maximum extent reasonably possible. A breach of confidentiality by any member of the Inquiry Committee, the Investigation Committee or others involved in the process may, in itself, constitute grounds for formal disciplinary action.

G. Termination of Inquiry or Investigation Process

If informal resolution occurs during an Inquiry or Investigation, or if an Inquiry or Investigation is to be terminated before its completion for any other reason, the Integrity Officer will complete a report of such planned termination, including a description of the reasons for such termination. The Integrity Officer will notify the Complainant and the Respondent of the termination of proceedings, and the reasons for termination.

H. Coordination with Other University Offices

In the course of an Inquiry or Investigation, information or evidence may raise questions about compliance with other University policies. In such cases, the Integrity Officer shall refer the matter to the appropriate University official for consideration under the applicable policy.

I.  Reporting to Funding Agencies

Generally, the Integrity Officer is responsible for ensuring compliance with all notification requirements of funding agencies. Typically, the Integrity Officer will notify governmental funding agencies after the Inquiry Committee determines that an Investigation is warranted. In addition, the Integrity Officer will notify the appropriate agencies at any stage of the Inquiry or Investigation if the Integrity Officer determines that:

1.  there is an immediate health hazard involved;
2.  there is an immediate need to protect governmental funds or equipment;
3.  there is an immediate need to protect the Complainant or the Respondents or their co-investigators and associates;
4.  it is probable that the alleged incident will be reported publicly;
5.  the allegation involves a public health issue, *e.g.*, a clinical trial; or
6.  there is a reasonable indication of a possible criminal violation.

J.  Timing of Inquiries and Investigations

Under present regulations, PHS and NSF require Inquiries to be completed within 60 and 90 days, respectively, from the date of their initiation. These timelines prevail even in cases in which a designated subcommittee is utilized by an Inquiry Committee. Under present regulations, PHS and NSF require Investigations to be completed within 120 and 180 days, respectively, from the date of their initiation.

In all cases, subject to obtaining required approvals from PHS, NSF or others, the Integrity Officer may approve an extension of these periods, in writing, if circumstances clearly warrant a longer period. The Respondent will be notified of the extension and the reason for the extension. The reason for the extension will be stated in the Inquiry Report.


**Procedures**

**I. Stages in the Process**

A.  Stage 1: Preliminary Assessment

Upon being advised of an allegation of misconduct, the Integrity Officer preliminarily will assess whether sufficient information exists to refer the matter to an Inquiry Committee and what, if any, governmental support or applications for support might trigger government agency oversight of the allegation. The Integrity Officer will prepare a written report of his or her conclusions.

In cases in which a Respondent has more than one role at the University (*e.g.*, faculty member and administrator or faculty member and graduate student), the Integrity Officer

shall determine under which of the two sets of procedures the matter will proceed (*i.e.*, those procedures designated for members of Group 1 or those designated for members of Group 2).

If the Integrity Officer concludes that an Inquiry Committee should be convened, he or she will take necessary measures to ensure that all original records and materials relevant to the allegation are immediately secured.

B.  Stage 2: The Inquiry Stage

   1. Initiation of the Inquiry

If an allegation of misconduct proceeds to an Inquiry, the Integrity Officer promptly will (1) notify the Respondent, in writing, that an Inquiry Committee will be convened to consider an allegation of misconduct, (2) specify the nature of the allegation, (3) provide a copy of this policy to the Respondent, and (4) notify the Respondent that he or she will have the opportunity to be interviewed by and present evidence to the Inquiry Committee.

   2. Appointment of the Inquiry Committee

For members of Group 1, upon the Integrity Officer's conclusion that an Inquiry Committee should be convened, the Personnel Committee may undertake an Inquiry itself or it may designate a subcommittee to preliminarily collect and evaluate the evidence. If a subcommittee is designated, the subcommittee will be advisory to the Personnel Committee (the Personnel Committee always will function as the Inquiry Committee). If a subcommittee is designated, the Personnel Committee shall consult with the Integrity Officer regarding the membership of the subcommittee.

For members of Group 2, the Integrity Officer will appoint an Inquiry Committee promptly upon concluding that an Inquiry Committee should be convened.

In all cases, the Inquiry Committee or subcommittee, as appropriate, shall consist of three or more people who have no real or apparent conflicts of interest in the case, are unbiased and have the necessary expertise in the relevant discipline(s) to evaluate the evidence and issues related to the allegation, interview the principals and conduct the Inquiry. These people may be from inside or outside Temple.

   3. Notification of Respondent

For members of Group 1, the Personnel Committee promptly will notify the Respondent and the Integrity Officer of the Personnel Committee membership and the proposed membership of the designated subcommittee (if one is appointed). If the Respondent submits a written objection to any appointed member of the Personnel Committee or designated subcommittee based on bias, conflict of interest or lack of necessary expertise within seven days of the date of the Personnel Committee's notification of the proposed

membership, the Personnel Committee, after consulting with the Integrity Officer, will determine whether to replace the challenged member with a qualified substitute.

For members of Group 2, the Integrity Officer promptly will notify the Respondent of the proposed Inquiry Committee membership. If the Respondent submits a written objection to any appointed member of the Inquiry Committee based on bias or conflict of interest within seven days of the date of the Integrity Officer's notification of the proposed membership, the Integrity Officer will determine whether to replace the challenged member with a qualified substitute.

      4.      <u>Function of the Inquiry Committee or Subcommittee</u>

The Inquiry Committee will determine (1) whether there is sufficient evidence of actionable misconduct to warrant an Investigation, and (2) if so, whether in its view, formal proceedings to consider dismissal or discipline should be instituted.

At all times, the Inquiry Committee may make proposals for informal resolution.

      5.      <u>Charge to the Inquiry Committee (or Subcommittee) and the First Meeting</u>

The Integrity Officer will provide the Inquiry Committee or designated subcommittee, as appropriate, with a written report describing the allegation(s) and will inform the Inquiry Committee or designated subcommittee about this policy and applicable regulations and requirements. The Integrity Officer will be available at the Committee's request to provide other information or serve as a witness. Except when the Integrity Officer is a witness, he or she may not be present during interviews of other witnesses. The Integrity Officer will not participate in the Inquiry Committee's or designated subcommittee's substantive deliberations.

Counsel for the University will be available throughout the Inquiry to advise the Committee as needed, especially with regard to complying with this policy and its procedures and with utilizing applicable standards imposed by government agencies or external funding sources. Counsel will not participate in the Inquiry Committee's substantive deliberations.

      6.      <u>The Inquiry Committee's Report</u>

In all cases, the Inquiry Committee will prepare a written report that states the name and title of the Committee members, the allegations, the source of grant funding involved, if any, and a description of the evidence in sufficient detail to demonstrate (1) whether there is sufficient evidence of actionable misconduct to warrant an Investigation, and (2) if so, whether in its view, formal proceedings to consider dismissal or discipline should be instituted. If the Inquiry Committee does not recommend charges, the Inquiry Committee will state what, if any, other actions it recommends be taken.

In cases involving members of Group 1, the subcommittee (if one is designated) will deliver its report to the Personnel Committee for the purpose of complying with those

responsibilities incumbent upon an Inquiry Committee and in accordance with its responsibilities set forth in the dismissal and dismissal/discipline policies contained in the Faculty Handbook and Temple/TAUP Contract, respectively. In such cases, the Personnel Committee will review the subcommittee's report or conduct further Inquiry and produce its own report. The Personnel Committee shall then transmit its report and recommendation to the President for action consistent with the dismissal and discipline/dismissal policies contained in the Faculty Handbook and Temple/TAUP Contract, respectively.

In cases involving members of Group 2, if the Inquiry Committee determines that an Investigation is warranted, the Integrity Officer will forward the Inquiry Committee's report to the President for further action consistent with this policy.

C. Stage 3: Consideration and Action by the President or The President's Designee

1. Consideration and Action by the President in Cases Involving Members of Group 1

In cases involving members of Group 1, the President, upon receipt of the Inquiry Committee's report, will take further actions consistent with the dismissal and dismissal/discipline policies contained in the Faculty Handbook and the Temple/TAUP Contract, respectively, as applicable. Formal proceedings for discipline or dismissal of faculty members in Group 1 are described in the dismissal and dismissal/discipline policies contained in the current versions of the Faculty Handbook and Temple/TAUP Contract at Sections VI. and Article 13, respectively.

2. Action by the President or the President's Designee in Cases Involving Members of Group 2

If the Inquiry Committee concludes that an Investigation is warranted, the President or the President's Designee will designate an individual to appoint an Investigation Committee to consider whether the Respondent committed actionable misconduct.

In all cases, if the President or the President's Designee decides an Investigation is warranted, the Integrity Officer will inform relevant governmental funding agencies, if any, and take other actions consistent with applicable laws and regulations.

D. Stage 4: The Investigation Stage

1. Purpose of the Investigation

The purpose of the Investigation is to explore in detail the allegations, to examine the evidence in depth and to determine specifically whether the Respondent committed actionable misconduct.

2. Appointment of the Investigation Committee

In cases involving any member of Group 1, if the President commences formal proceedings, the procedures for dismissal and dismissal/discipline contained in the Faculty Handbook and Temple/TAUP Contract, respectively, for instituting formal proceedings for discipline or dismissal will be utilized, including those pertaining to formulating the charges and appointing a committee to hear the charges. The Personnel Committee will appoint the members of the Investigation Committee after consulting with the Integrity Officer.

In cases involving members of Group 2, the relevant section of the Temple/TAUP Contract or other governing document will be utilized. The President or the President's Designee will appoint the members of the Investigation Committee after consulting with the Integrity Officer, as appropriate.

In all cases, the Investigation Committee shall consist of at least three individuals who have no real or apparent conflicts of interest in the case, are unbiased and have the necessary expertise to evaluate the evidence and issues related to the allegations, interview the principals and key witnesses and conduct the Investigation. These persons may be from inside or outside Temple.

For members of Group 1, the Personnel Committee promptly will notify the Respondent and the Integrity Officer of the proposed Committee membership. If the Respondent submits a written objection to any appointed member of the Investigation Committee based on bias or conflict of interest within seven days of the date of the Personnel Committee's notification of the proposed membership, the Personnel Committee, after consulting with the Integrity Officer, will determine whether to replace the challenged member with a qualified substitute.

For members of Group 2, the President's Designee promptly will notify the Respondent of the proposed Committee membership. If the Respondent submits a written objection to any appointed member of the Investigation Committee based on bias or conflict of interest within seven days of the date of the President's Designee's notification of the proposed membership, the President's Designee will determine whether to replace the challenged member with a qualified substitute.

3. Charge to the Investigation Committee and the First Meeting

At the Committee's first meeting, a representative or designee of the Personnel Committee or the President's Designee, as appropriate, will review the charge(s), discuss the Inquiry Report and describe the procedures for conducting the Investigation, including the necessity to maintain confidentiality. The Committee will be instructed that it is to determine whether, in its view, actionable misconduct occurred and, if so, to recommend action by the University up to and including dismissal.

The Integrity Officer will advise the Investigation Committee at its initial meeting about applicable University or regulatory procedures or requirements and will be available at the Committee's request to provide other information or serve as a witness. Except when the Integrity Officer is a witness, he or she may not be present during interviews of other witnesses. Neither the Integrity Officer nor the President's Designee will participate in the Investigation Committee's substantive deliberations.

Counsel for the University will be available throughout the Investigation process to advise the Committee, as needed, especially with regard to complying with this policy and its procedures and with utilizing applicable standards imposed by government agencies or external funding sources. Counsel will not participate in the Inquiry Committee's substantive deliberations.

4. Investigation Process

In all cases, it is within the Investigation Committee's sole discretion to determine what evidence to consider, which witnesses to interview (other than the Respondent) and how to run the proceedings, in general. However, the Respondent shall be given the opportunity to appear before the Investigation Committee and/or to present written evidence. All interviews shall be recorded. Interviewed parties will be given the opportunity to review transcripts of their interview, and if they choose to do so, shall be permitted a reasonable opportunity to comment on the transcription. Such comments, if any, shall be included as part of the Investigation file.

5. The Investigation Committee's Report

In all cases, the Investigation Committee will prepare a report for the President or the President's Designee that describes the source(s) of funding, if any, describes the evidence considered, states whether the Respondent is found to have engaged in actionable misconduct, states the text or a summary of the views of the Respondent, states the findings and the basis for the findings, and states the recommended sanctions, if any.

Counsel for the University will review the Investigation Report, in draft form, and will provide advice for the Committee's consideration.

The Investigation Committee will provide the Respondent and the Integrity Officer with a copy of the Investigation Report. Further disposition of and action upon the Investigation Report will be made consistent with applicable procedures for discipline/dismissal.

Once the President or the President's Designee, as appropriate, has taken final action, the Integrity Officer will inform relevant government funding agencies, if any, and take other actions consistent with applicable laws and regulations.

E.  Stage 5:  Consideration by the President or The President's Designee

In all cases, the President or the President's Designee, after receiving the report of the Investigation Committee, will determine what action the University will take.

II. **Other Considerations**

A.  Termination of Employment Prior to Completing Inquiry or Investigation

The termination of the Respondent's institutional employment, by resignation or otherwise, need not preclude or terminate the misconduct procedures.

B.  Interim Administrative Actions

Institutional officials will take interim administrative actions, as appropriate to protect federal or state funds and to safeguard the purposes of the grant.

C.  Protecting the Respondent's Reputation

If the Respondent is found not to have committed actionable misconduct, the Integrity Officer will, if appropriate, make reasonable efforts to restore his or her reputation.  Any institutional actions to restore the Respondent's reputation must first be approved by the President or the President's Designee, whomever made the final decision with regard to the allegations at issue.

D.  Protecting the Complainant's Reputation

Upon completion of an Investigation, the President or the President's Designee will determine, after consulting with the Complainant, what steps, if any, are needed to restore the position or reputation of the Complainant.  The Integrity Officer is responsible for implementing any steps the President or the President's Designee approves.  The Integrity Officer will also take appropriate steps during the Inquiry and Investigation to prevent any retaliation against the Complainant.

E.  Allegations not Made in Good Faith

If relevant, the President or the President's Designee will determine whether the Complainant's allegations were made in good faith.  If an allegation was not made in good faith, the President or the President's Designee will determine whether any administrative action should be taken against the Complainant.

III. **Record Retention**

After an Inquiry or Investigation is completed, the Integrity Officer will assemble a file including the records and reports of any Inquiry or Investigation and copies of all documents and other materials furnished to the Integrity Officer or committee.  The

Integrity Officer will keep all such files for at least three years after the University takes final action with regard to the misconduct allegation.

**Notes**

1.  **Dates of official enactment and amendments:**

    Approved by the Faculty Senate on March 21, 1991. Adopted by the Board of Trustees on May 12, 1992.

    Amended and expanded by the Faculty Senate on March 21, 2002. Amendment and expansion approved by the Board of Trustees on May 14, 2002.

2.  **History:**

    The May 14, 2002 amendment significantly expanded the existing policy. The 1992 version of the policy is on file in the Office of the University Policy Coordinator.

3.  **Cross References**