# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN HOUSER, Ph.D., FAHA | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 2021-00676 |
| v. | ) | |
| | ) | |
| TEMPLE UNIVERSITY AND | ) | |
| ARTHUR M. FELDMAN, MD, PHD | ) | JURY TRIAL DEMAND |
| *Defendants*. | ) | |

## PLAINTIFF'S MOTION TO DISMISS
## <u>THE COUNTERCLAIMS OF DEFENDANT, ARTHUR M. FELDMAN, MD, PH.D.</u>

Plaintiff, Dr. Steven Houser, Ph.D., FAHA ("Dr. Houser"), moves this Court to dismiss the Counterclaims of Defendant, Arthur M. Feldman, MD, Ph.D ("Dr. Feldman), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Dr. Feldman fails to state any claim upon which relief can be granted for his claims for defamation and alleged tortious interference with an existing or prospective contractual relationship against Dr. Houser. Dr. Feldman cites neither any actionable defamatory conduct or statements nor any identifiable contractual relations which he had or prospectively had. In short, Dr. Feldman's Counterclaims are merely an outline of personal complaints he has against Dr. Houser, none of which are actionable as causes of action in this Court. Additionally, this Court should dismiss Dr. Feldman's Counterclaims with prejudice, as any amended pleading would be futile, because Dr. Feldman has conceded in discovery that he has absolutely no evidence to support any claims for either defamation or tortious interference with any contractual relations.

WHEREFORE, for the reasons stated more fully in the accompanying Memorandum of Law, which is incorporated herein by reference, Dr. Houser respectfully requests that this Court grant the Motion to Dismiss and dismiss Dr. Feldman's Counterclaims for (1) defamation and (2) tortious interference with contractual relations, with prejudice.

Dated: July 6, 2022                         Respectfully submitted,

*/s/ David M. Burkholder*
David M. Burkholder, Esquire
Courtney A. Keaveney, Esquire
dburkholder@wispearl.com
ckeaveney@wispearl.com
**WISLER PEARLSTINE, LLP**
460 Norristown Road, Suite 110
Blue Bell, PA 19422
Telephone:      (610) 825-8400
Facsimile:      (610) 828-4887

Nicole D. Galli (PA Id. #78420)
ndgalli@ndgallilaw.com
**ND Galli Law LLC**
One Liberty Place
1650 Market Street
Suite 3600, #00250
Philadelphia, PA 19103
Telephone:      215-525-9580
Facsimile:      215-525-9585

*Counsel for Plaintiff,*
*Steven Houser, Ph.D., FAHA*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN HOUSER, Ph.D., FAHA | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 2021-00676 |
| v. | ) | |
| | ) | |
| TEMPLE UNIVERSITY AND | ) | |
| ARTHUR M. FELDMAN, MD, PHD | ) | JURY TRIAL DEMAND |
| *Defendants*. | ) | |


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIMS OF DEFENDANT, ARTHUR M. FELDMAN, MD, PH.D.

## TABLE OF CONTENTS

I.     **INTRODUCTION**................................................................................................. 1

II.    **FACTUAL BACKGROUND** .............................................................. 2

III.  **STANDARD FOR MOTION TO DISMISS**................................. 6

IV.  **ARGUMENT** ...................................................................................... 7

    A.   Dr. Feldman's Counterclaim for Defamation Should be Dismissed................................ 7

    B.   Dr. Feldman's Counterclaim for Tortious Interference with Existing or Prospective Contractual Relations Should be Dismissed ........................................................... 12

V.    **CONCLUSION** ...................................................................... 16

i

# **TABLE OF AUTHORITIES**

**Cases**

*Accord Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ................................. 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 7

*Beverly Enterprises, Inc. v. Trump*, 182 F.3d 183 (3d Cir. 1999) .............................. 8, 9

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) ........................................ 7

*Daniel Adams Assocs., Inc. v. Rimbach Pub., Inc.*, 360 Pa. Super. 72, 519 A.2d 997, 1000 (1987)
.................................................................................................................................... 12

*Ersek v. Township of Springfield*, 822 F. Supp. 218 (E.D.Pa.1993), aff'd 102 F.3d 79 (3d
Cir.1996) .................................................................................................................... 8

*Evans v. Philadelphia Newspapers, Inc.*, 411 Pa. Super. 244, 252, 601 A.2d 330, 334–35 (1991)
.................................................................................................................................... 13

*Kanter v. Barella*, 489 F.3d 170 (3d Cir. 2007) ........................................................... 7

*Kryeski v. Schott Glass Techs., Inc.*, 426 Pa. Super. 105, 116, 626 A.2d 595 (1993) .................. 8

*Nix v. Temple University*, 408 Pa.Super. 369, 596 A.2d 1132 (1991) ................................... 12, 15

*Phillips v. Selig*, 2008 PA Super 244, ¶ 20, 959 A.2d 420, 428 (2008) ....................... 12

*Reardon v. Allegheny Coll.*, 2007 PA Super 160, ¶ 20, 926 A.2d 477 (2007) .............. 8

*Roseman v. Hassler*, 382 F. Supp. 1328, 1341 (W.D. Pa. 1974) .............................. 13, 14

*Roseman v. Indiana Univ. of Pennsylvania, at Indiana*, 520 F.2d 1364 (3d Cir. 1975).............. 13

*Scott-Taylor, Inc. v. Stokes*, 425 Pa. 426, 428, 229 A.2d 733 (1967) ............................ 8

*Sheridan v. NGK Metals Corp.*, 609 F.3d 239 n.27 (3d Cir. 2010) ................................ 6

*Smith v. Sch. Dist. of Philadelphia*, 112 F. Supp. 2d 417 (E.D. Pa. 2000) ..................... 7

*Smith v. Wagner*, 403 Pa. Super. 316, 321, 588 A.2d 1308 (Pa. Super. Ct. 1991) ........................ 7

*Tatis v. Allied Interstate, LLC*, 882 F.3d 422 (3d Cir. 2018) .......................................... 6

*Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 471 (1979)..................... 12, 15

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 2009 PA Super 191, ¶ 8, 982 A.2d 94

   (2009), aff'd, 610 Pa. 371, 20 A.3d 468 (2011) ................................................. 12, 13

*Wells v. Thomas*, 569 F. Supp. 426 (E.D. Pa. 1983)............................................ 13, 14

*Zartman v. Lehigh Cnty. Humane Soc.*, 333 Pa. Super. 245, 250, 482 A.2d 266 (1984) ........... 8, 9

**Statutes**

42 Pa.S.C.A. § 5523(1) ................................................................................. 10

**Rules**

FED.R.CIV.P. 12(b)(6) .................................................................................. 6

## I.      INTRODUCTION

Plaintiff, Steven Houser, PhD, FAHA ("Plaintiff" or "Dr. Houser"), a respected cardiac researcher, has been a member of the faculty at the School of Medicine at Defendant, Temple University ("Temple"), for more than forty (40) years. Nonetheless, for the last three (3) years, Temple and co-defendant Arthur M. Feldman, MD, PhD ("Dr. Feldman"), a colleague of Dr. Houser, (collectively "Defendants") have engaged in a concerted campaign to discredit Dr. Houser, at least in part to divert attention from Dr. Feldman's and Temple's wrongful misappropriation of Dr. Houser's intellectual property. Defendants moved to dismiss Dr. Houser's federal claim for trade secrets misappropriation, which this Court denied as to Temple but granted as to Dr. Feldman solely on limitations grounds.  Later, Defendants moved – again – to dismiss more of Dr. Houser's claims, but most of his claims remain intact.  [Dkt. 78].  This Court directed Defendants to answer the remaining counts in Dr. Houser's Amended Complaint.

On June 1, 2022, Dr. Feldman answered Dr. Houser's Amended Complaint and filed Counterclaims against Dr. Houser for (1) defamation and (2) tortious interference with existing and potential contracts.  As explained in greater detail below, however, Dr. Feldman has failed to plead (or identify) a single defamatory statement made by Dr. Houser, and has failed to plead one current or prospective contract with which Dr. Houser allegedly interfered.  Thus, Dr. Houser respectfully requests this Court grant Dr. Houser's motion to dismiss Dr. Feldman's Counterclaims in their entirety.

Additionally, this Court should dismiss Dr. Feldman's Counterclaims with prejudice, since any amended pleading would be futile, as a result of his testimony under oath which overwhelmingly establish that he has no basis for both of these claims.

## II.     FACTUAL BACKGROUND

On June 1, 2022, Dr. Feldman filed a document entitled "Defendant Arthur M. Feldman's Answer to Plaintiff's Amended Complaint with Counterclaims" (hereafter, the "Counterclaims"). In the Counterclaims, Dr. Feldman alleges that in 2011, Defendant Temple University "recruited" him as the Executive Dean of the Lewis Katz School of Medicine and Chief Academic Officer of the Health System. *See* Counterclaims, ¶ 371.  Dr. Feldman claims that he last held these positions at the end of 2015. *Id.*  Since that time, Dr. Feldman alleges that he has been the "Laura H. Carnell Professor of Medicine of the Lewis Katz School of Medicine at Temple University." *Id.*, ¶372.

Dr. Feldman further claims that he alone is "responsible for groundbreaking research regarding a molecule known as BAG3" which, he contends, might have positive impacts on heart failure treatments. *Id.*, ¶¶373-396.  Dr. Feldman alleges that his studies "in humans and mice" showed a "potential of increasing or replenishing BAG3 as a treatment for heart failure." *Id.*, ¶397. To that end, Dr. Feldman also alleges that on January 31, 2014, he filed a provisional patent with the United States Patent Office. *Id.*, ¶398.  Dr. Feldman contends that he was freely given various pig tissue, which he claims "were ancillary to [his] underlying conclusions" about BAG3, by Dr. Houser and/or his graduate student, Thomas Sharp. *Id.*, ¶¶407, 409-413 and 422.  According to Dr. Feldman, Dr. Houser "does not study BAG3[.]" *Id.*, ¶423.

Beginning on page 61 of the Counterclaims, Dr. Feldman renumbers the paragraphs of his pleading anew, starting at paragraph 1 and continuing to paragraph 60 wherein he purports to assert the bases for his Counterclaims for defamation and tortious interference with existing or contractual relations. *Id.*, ¶1-60.  In specific support of the Counterclaims, Dr. Feldman alleges that Dr. Houser is the "Senior Associate Dean of Research at" Temple University. *Id.*, ¶1.  Further, Dr. Feldman contends that given his forty-year tenure at Temple, Dr. Houser "wields significant influence" and his every statement to colleagues "includes the imprimatur of knowledge and

2

authority." *Id.*, ¶¶2-3.  Dr. Feldman alleges that Dr. Houser "has consistently disparaged Dr. Feldman to their colleagues with the Temple community and to other professionals and collaborators in the scientific community at large with the explicit intent to harm Dr. Feldman's career and reputation." *Id.*, ¶4.  In particular, Dr. Feldman alleges that "Dr. Houser has made disparaging comments concerning, inter alia, Dr. Feldman's work at Temple, his research on BAG3, his reputation in the medical and scientific communities and even his health." *Id.*, ¶6.

Dr. Feldman cites an email from Dr. Houser to Dr. Jeffrey Molkentin, the head of the Division of Molecular Cardiovascular Biology at Cincinnati's Children's Hospital, in which Dr. Houser referred to Dr. Feldman as "always evil" as the example of Dr. Houser's alleged defamation. *Id.*, ¶7; *see also* December 24, 2019 Email from Steven Houser to Jeffrey Molkentin, attached hereto as Exhibit "A."[1]  The crux of Dr. Feldman's defamation claim is that "upon information and belief, Dr. Houser continues to disparage Dr. Feldman to Dr. Molkentin to this day." *Id.*, ¶9. In further purported support of the defamation claim, Dr. Feldman alleges that:

- "In another instance, Dr. Houser questioned Dr. Feldman's **mental acuity** in reference to an email that Dr. Feldman sent to a fellow Temple colleague when, in fact, there was nothing amiss in Dr. Feldman's email." *Id.*, ¶10 (emphasis added).

- "Dr. Houser disparaged Dr. Feldman to Temple colleagues on multiple occasions by **insinuating** that Dr. Feldman does not deserve his salary or pull his weight at the University." *Id.*, ¶11 (emphasis added).

- "He also **implied** that Dr. Feldman has wrongfully appropriated funds intended for others within the University." *Id.* (emphasis added).

- "***These and other disparaging and defamatory statements*** have damaged and continue to damage Dr. Feldman's reputation both within and outside of the Temple community." *Id.*, ¶12 (emphasis added).

---

[1] Despite referencing this very email in his pleadings, Dr. Feldman chose not to attach it to his Counterclaims.

Dr. Feldman complains that his efforts "to address Dr. Houser's defamatory comments" have failed. *Id.*, ¶¶14-15. Further, Dr. Feldman alleges that this so-called defamatory conduct has caused him damages, in the form of lost professional opportunities, "the esteem of his peers, and has created an unpleasant, if not toxic, working environment at Temple." *Id.*, ¶16.

Dr. Feldman next alleges that Dr. Houser interfered with various "business and contractual relations" which Dr. Feldman contends he had. *Id.*, ¶¶17-45. Specifically, Dr. Feldman contends that:

- "Dr. Houser was able to tortiously interfere with Dr. Feldman's relationship with senior leadership at the Medical School to such a degree that it was not until an interim dean was appointed at the Medical School in or around June 2021, that Dr. Feldman was able to finally obtain new lab space in or around July 2021. This was after nearly six years of Dr. Feldman attempting to relocate his lab." *Id.*, ¶28.

- "Upon information and belief, Dr. Houser has quashed or refused to publish any positive press, news, or information about either Dr. Feldman's discoveries or Renovacor." *Id.*, ¶31.

- "Dr. Elrod and Dr. Feldman worked on this article for two years; however, upon information and belief, Dr. Houser continuously disparaged Dr. Feldman to Dr. Elrod, which resulted in Dr. Elrod abruptly requesting that Dr. Feldman remove his name from the article as they were preparing to submit it for publication." *Id.*, ¶38.

- "The documents and e-mails that have been produced so far in discovery confirm what Dr. Feldman long suspected-that Dr. Houser has worked both overtly and behind the scenes to diminish Dr. Feldman in the eyes of his peers and Temple administrators." *Id.*, ¶46.

In the Counterclaims, Dr. Feldman purports to assert a claim for defamation, alleging, among other things, that "Dr. Houser has made several communications concerning Dr. Feldman to mutual colleagues within and outside of Temple, including, but not limited to Dr. John Daly, Dr. Larry Kaiser, Dr. Jeffrey Molkentin, Dr. Patrick Most, Dr. Michele Masucci, Catherine Makarewich, and Thomas Kupp." *Id.*, ¶50. Further, Dr. Feldman claims that he "reviewed a number of these communications in the discovery provided by both Temple and Dr. Houser and

has every reason to believe that the defamation is ongoing and that more examples exist." *Id.* Dr. Feldman alleges that the purported communications "were published to third-parties [sic], without privilege or justification, with the sole intent of tarnishing Dr. Feldman's personal and professional reputations and harming his career[.]" *Id.*, ¶52. Dr. Feldman claims that he "has suffered both pecuniary and reputational damage." *Id.*, ¶54.

During his deposition, however, Dr. Feldman identified only one allegedly defamatory statement he contends that Dr. Houser made and could not identify any other purported defamatory statements, the persons involved in such discussions, when the discussions reportedly occurred or any other corroborative fact or piece of evidence to support his baseless defamation claims. *See generally* Video Deposition Transcript of Arthur M. Feldman, M.D., Ph.D. (hereafter, the "Feldman Deposition"), the relevant excerpts of which are attached hereto collectively as Exhibit "B," at 86-91. Specifically, Dr. Feldman was asked about when he believed the alleged defamation began, he responded "my guess is that it's been going on, I don't know, some period of time. I don't know when it started." *See* id. at 86:10-17. Dr. Feldman admitted that he did not have any hard evidence or knowledge of any defamatory conduct on behalf of Dr. Houser towards him. *Id.* at 87:10-16. The only thing Dr. Feldman recalled that Dr. Houser allegedly said about him was that "somebody told me that he, he told them or told somebody else that he didn't think BAG3 was going to go anywhere, that it was just a flash in the pan." *Id.* at 90:1-6.

Dr. Feldman, however, could not remember who told him this allegedly defamatory comment. *Id.* Further, when asked what else he heard, Dr. Feldman responded by repeating alleged statements *made by Dr. Houser to Dr. Feldman* upon their first introduction in 2011. *Id.* at 90:7-25. Besides the above, Dr. Feldman testified under oath that he did not recall anything else that Dr. Houser has said about him. *Id.* at 91:10-14.

Also in the Counterclaims, Dr. Feldman attempts to assert a claim for tortious interference with an existing or prospective contractual relationship against Dr. Houser.  *See* Counterclaims, ¶¶55-60.  Specifically, Dr. Feldman complains that as an employee of Temple, he "has a contractual and business relationship with Temple in connection with his medical and scientific research and affiliation with Renovacor."  *Id.*, ¶57.  Dr. Feldman alleges that Dr. Houser "intentionally attempted to":

> i.     "harm Dr. Feldman's relationships with his colleagues at Temple and elsewhere;
>
> ii.    prevent Dr. Feldman from obtaining adequate lab space to further his scientific research;
>
> iii.   prevent Dr. Feldman from publishing in the academic literature with well-regarding [sic] authors;
>
> iv.   prevent Dr. Feldman from obtaining the recognition he deserves through Temple's public relations and publicity department; and
>
> v.    diminish Dr. Feldman's ability to obtain funding for future grants."

*Id.*, ¶58.  Dr. Feldman next alleges that "[t]here is no applicable privilege or justification for Dr. Houser's conduct."  *Id.*, ¶59.  Consequently, Dr. Feldman contends that he "suffered and continues to suffer significant economic and reputational harm."  *Id.*, ¶60.

## III.    STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted.  *See* FED.R.CIV.P. 12(b)(6).  When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant."  *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (*quoting Sheridan v. NGK Metals Corp.*, 609 F.3d 239, n.27 (3d Cir. 2010)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id. Accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed me accusation.") (internal quotes omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*quoting Twombly*, 550 U.S. at 557). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (*quoting Iqbal*, 550 U.S. at 679).

Additionally, "where an amended pleading would be futile, that alone is sufficient ground to deny leave to amend." *Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007).

## IV.   ARGUMENT

### A.   <u>Dr. Feldman's Counterclaim for Defamation Should be Dismissed</u>

In order to state a claim for defamation, a complaint must contain facts that, if proven, would establish:  "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) a reference to the plaintiff; (4) a recipient's understanding of the communication's defamatory character and its application to plaintiff; (5) special harm resulting from the publication; and (6) abuse of any conditional privilege." *Smith v. Wagner*, 403 Pa. Super. 316, 321, 588 A.2d 1308, 1311 (Pa. Super. Ct. 1991). "An allegation of defamation is subject to a more stringent standard of pleading than is usually the case." *Smith v. Sch. Dist. of Philadelphia*, 112 F. Supp. 2d 417, 429 (E.D. Pa. 2000). "The complaint on its face must 'specifically identify what

allegedly defamatory statements were made by whom and to whom.'" *Id*. (*quoting Ersek v. Township of Springfield*, 822 F. Supp. 218, 223 (E.D.Pa.1993), aff'd 102 F.3d 79 (3d Cir.1996)).

Thus, one pleading defamation must first prove the defamatory character of the communication. This initial determination is a question of law for the Court to decide. *Reardon v. Allegheny Coll*., 2007 PA Super 160, ¶ 20, 926 A.2d 477, 484 (2007). "A statement is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter third persons from associating or dealing with him." *Zartman v. Lehigh Cnty. Humane Soc.*, 333 Pa. Super. 245, 250, 482 A.2d 266, 268 (1984). In making this determination, the Court "must determine the effect of the communication in the minds of average people amongst whom the communication is intended to circulate." *Id*.

"Pennsylvania courts have held that certain types of communications, although undoubtedly offensive to the subject, do not rise to the level of defamation." *Kryeski v. Schott Glass Techs., Inc*., 426 Pa. Super. 105, 116, 626 A.2d 595, 600–01 (1993) (statement that Plaintiff was crazy and emotionally unstable was not defamatory). "A statement that is merely an expression of an opinion, however, cannot constitute slander." *Reardon v. Allegheny Col at 484.* Further, Pennsylvania Courts have held that statements are not defamatory merely because they are annoying and embarrassing, as "annoyance does not constitute defamation." *Scott-Taylor, Inc. v. Stokes*, 425 Pa. 426, 428, 229 A.2d 733, 734 (1967). "[S]tatements which are merely annoying or embarrassing or no more than rhetorical hyperbole or a vigorous epithet are not defamatory." *Beverly Enterprises, Inc. v. Trump*, 182 F.3d 183, 187 (3d Cir. 1999).

Based on his own pleadings, Dr. Feldman's defamation claim against Dr. Houser fails as a matter of fact and law for numerous reasons. First, Dr. Feldman's pleadings have not identified a single "defamatory" statement under the law. In point of fact, the two most allegedly damning

statements that he is "always evil" or that Dr. Houser said that BAG3 was not "going anywhere" do not – in any universe – rise to the level of a defamatory statement.  At most, the "always evil" comment constitutes rhetorical hyperbole or even a "vigorous epithet" but in neither scenario is it defamatory.  *See Beverly Enterprises*, 182 F.3d at 187; *see also See* December 24, 2019 Email from Steven Houser to Jeffrey Molkentin, attached hereto as Exhibit "A."[2]

The other alleged and completely vague concepts identified in the pleadings – that Dr. Houser "continuously disparaged" Dr. Feldman, talked about his "mental acuity", "insinuate[ed]" that Dr. Feldman did not deserve his salary or pull his weight, or "implied" that Dr. Feldman appropriated funds – all fail to constitute defamatory conduct or statements, because they woefully lack any specificity about the precise comments.  *See generally* Counterclaims, ¶¶ 10-12.  Even assuming Dr. Feldman could identify, with any specificity, any particular comments directed at him from Dr. Houser which fall into the vague categories Dr. Feldman cited in his Counterclaims, none of those categories remotely constitute slander or defamation *per se*.  Instead, at most, the statements would constitute mere opinions of Dr. Houser, which Dr. Feldman might not like or find annoying but which do not rise to the level of being defamatory.  Dr. Feldman must allege how these non-specific concepts – that are not really statements – affected the "minds of average people amongst whom the communication is intended to circulate."  *See Zartman*, 482 A.2d at 268.  Drs. Houser and Feldman work daily in the worlds of academia, science and research, where everyone is accustomed to hyperbole, exaggeration to make a point and, most certainly, the free sharing of their opinions.  Nothing in the Counterclaims alleges any defamatory statements.

---

[2] Additionally, under Dr. Feldman's logic, the statement from Dr. Molkentin of "Hmmmm" after receiving Dr. Feldman's email could constitute defamation because Dr. Molkentin's statement certainly does not equate to a compliment or other positive comment about the receipt of a message from Dr. Feldman.  It seems that Dr. Molkentin himself did not share the same view of Dr. Feldman that he has about himself.

9

Second, Dr. Feldman's defamation allegations are completely devoid of other necessary facts such as specifically identifying "what allegedly defamatory statements were made by whom and to whom." *See Smith*, 112 F. Supp. 2d at 429.  In point of undisputed fact, Dr. Feldman does not identify a single date (or event that could link his claims to) when these alleged defamatory statements were made by Dr. Houser.  He also fails to allege any details about the specifics of the alleged statements, the recipients, the timing of the statements and so on.  Instead, Dr. Feldman is vaguely proclaiming that Dr. Houser made certain non-specific statements over an unidentified "continuing" period to unspecified recipients which generally "harmed" him.  From the allegations in the Counterclaims, one cannot tell when the statements first occurred.  The only specific instance – the December 24, 2019 email to Dr. Molkentin – occurred nearly two and a half years before Dr. Feldman filed the Counterclaims.  As a matter of law, even if Dr. Houser's statement contained therein could be defamatory (it is not), Dr. Feldman's statute of limitations on this statement expired on December 24, 2020.  *See* 42 Pa.S.C.A. § 5523(1) (mandating a one-year statute of limitations period for claims of libel, slander or defamation).  Dr. Feldman provides zero specifics to substantiate his broad claims of the so-called "continuing" conduct.  Instead, he complains about circumstances in his own career which he pins – without any evidence – on Dr. Houser.  That is not defamation under any standard of the law.

The reason why the Counterclaims are so vague became clear at Dr. Feldman's deposition. In his deposition, Dr. Feldman could not recite a single date or event, individual, or alleged defamatory statement to support his claim.  *See* Dr. Feldman's Deposition, 86-91.  Dr. Feldman could not even identify when the so-called defamation began, stating instead "my guess is that it's been going on, I don't know, some period of time. I don't know when it started."  *See* id. at 86:10-17.  Dr. Feldman further admitted that he did not have any hard evidence or knowledge of any

10

defamatory conduct on behalf of Dr. Houser towards him.  *Id*. at 87:10-16.  In fact, the only thing Dr. Feldman recalled that Dr. Houser allegedly said about him was that "somebody told me that he, he told them or told somebody else that he didn't think BAG3 was going to go anywhere, that it was just a flash in the pan."  *Id*. at 90:1-6.  However, when asked who told him this, he could not remember.  *Id*.  Dr. Feldman, given the chance to elaborate on any alleged defamatory statements made by Dr. Houser against him, responded by repeating alleged statements *made by Dr. Houser to Dr. Feldman* upon their first introduction in 2011.  *Id*. at 90:7-25.  Besides the above, Dr. Feldman testified under oath that he did not recall anything else that Dr. Houser has said about him.  *Id*. at 91:10-14.  Thus, none of the allegations in the Counterclaims or from Dr. Feldman himself qualify as "defamatory" statements.  Further, if any could, they are all time-barred.

Additionally, to the extent Dr. Feldman seems to suggest that he will "find" defamatory statements in the ongoing discovery in the case, he has self-authenticated his failure to state a valid claim.  While Dr. Houser does not believe that any defamatory documents exist, Dr. Feldman cannot sustain his current counterclaim for defamation on the hope or expectation that there is something else out there for him to discover.  Dr. Feldman has the obligation under the law to plead the elements of such a claim now, not provide vague placeholders which he might fill in later.  Hence, it is plain as a matter of fact and law that Dr. Feldman has not stated a claim for defamation upon which any relief can be granted, and Count I of his Counterclaims for defamation must be dismissed, with prejudice.  Additionally this Court should dismiss Dr. Feldman's Counterclaims with prejudice – based on his own admissions under oath – as any amendment would be futile, because Dr. Feldman admitted that he has no evidence of any such defamatory statements.

**B.**     **Dr. Feldman's Counterclaim for Tortious Interference with Existing or Prospective Contractual Relations Should be Dismissed**

Although Dr. Feldman seems to combine two counts into one, both alleged claims for tortious interference with existing and potential contractual relations are fatally flawed.  The necessary elements of a cause of action for tortious interference with existing contractual relationships are (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.  *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.,* 2009 PA Super 191, ¶ 8, 982 A.2d 94, 98 (2009), aff'd, 610 Pa. 371, 20 A.3d 468 (2011).

"Essential to a right of recovery under this section is the existence of a contractual relationship between the plaintiff and a 'third person' other than the defendant."  *Daniel Adams Assocs., Inc. v. Rimbach Pub., Inc*., 360 Pa. Super. 72, 78–79, 519 A.2d 997, 1000 (1987).  There is no third party where the person allegedly responsible for the interference is an agent of the party with whom complainant has or potentially has a contractual relationship with.  *Nix v. Temple University*, 408 Pa.Super. 369, 596 A.2d 1132 (1991) (persons alleged to have interfered with plaintiff's contract with Temple were all administrative officers of Temple who were acting on behalf of Temple when appellant was discharged; therefore, plaintiff failed to meet requirement of three parties).  Further, in defining a "prospective contractual relationship", Courts have held "it is something less than a contractual right, something more than a mere hope." *Thompson Coal Co. v. Pike Coal Co*., 488 Pa. 198, 209, 412 A.2d 466, 471 (1979).  "In determining the "reasonable likelihood or probability" of a prospective contractual relationship, courts must apply an objective standard." *Phillips v. Selig*, 2008 PA Super 244, ¶ 20, 959 A.2d 420, 428 (2008). "In so doing,

Pennsylvania courts have consistently required more evidence than the existence of a current business or contractual relationship." *Id.*

Another requirement for a claim for tortious interference with an existing or potential contract is the absence of privilege or justification. *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.* at 98; *but see Roseman v. Hassler*, 382 F. Supp. 1328, 1341 (W.D. Pa. 1974), aff'd sub nom. *Roseman v. Indiana Univ. of Pennsylvania*, *at Indiana*, 520 F.2d 1364 (3d Cir. 1975) (holding that "communications between subordinate faculty members and the deans and officers and trustees of a university with respect to employment matters of other members of the faculty should be regarded as privileged..."); *Wells v. Thomas*, 569 F. Supp. 426, 435 (E.D. Pa. 1983) (holding that "supervisors of plaintiff, defendants were privileged when they evaluated her performance, discussed among themselves her position at HUP and in the University, and passed their evaluation onto their superiors").[3]

Here, Dr. Feldman's pleading failed to establish the existence of a third party, any existing or potential contractual relationship and the absence of any privilege which, assuming Dr. Houser somehow affected all the things complained of (which he did not), Dr. Houser did not have. Regarding the justification of a privilege, the reality is this:  Dr. Houser was identified by Dr. Feldman as the Senior Associate Dean of Research at Temple University.  Counterclaims, ¶1.  Not a single allegation made by Dr. Feldman avers that Dr. Houser acted outside of his scope of

---

[3] Additionally, Dr. Feldman fails to identify any specific time frames for the alleged interference by Dr. Houser.  In fact, it seems that Dr. Feldman's claim for tortious interference is based in large part if not entirely upon the alleged defamatory communications by Dr. Houser which he has complained of.  Thus here, Dr. Feldman's tortious interference claims are indistinguishable from the claims of libel and slander, and consequently the same one-year limitation period that applies to libel and slander should apply to Dr. Feldman's tortious interference claims. *Evans v. Philadelphia Newspapers, Inc.*, 411 Pa. Super. 244, 252, 601 A.2d 330, 334–35 (1991).  Under this applicable law, moreover, Dr. Feldman's tortious interference claims filed more than 1 year prior to the filing of his Counterclaims are barred, with prejudice.

responsibilities as Dean.  *See generally* Counterclaims (failing to identify any moment when Dr. Houser acted outside of his scope of authority as Dean).  Dr. Feldman reported to/through Dr. Houser for scientific research, lab space, and more.  Most every complaint Dr. Feldman makes would potentially fall within the ambit of Dr. Houser's responsibilities as Dean.  *See* Counterclaims, ¶58 (complaining that Dr. Houser (i) harmed his relationships with his colleagues at Temple; (ii) prevented him from obtaining adequate lab space to further his scientific research; and (iv) prevented him from obtaining the recognition he deserves through Temple's public relations and publicity department).  As Dean of the university's research arm, Dr. Houser had every right (and indeed every obligation) to make decisions as it relates to Dr. Feldman's work respecting equipment, lab space, financial condition of Dr. Feldman's lab and resources and his performance.  *See Roseman*, 382 F. Supp. At 1341 ("communications between subordinate faculty members and the deans and officers and trustees of a university with respect to employment matters of other members of the faculty should be regarded as privileged"); *Wells*, 569 F. Supp. at 435 (as "supervisors of plaintiff, defendants were privileged when they evaluated her performance, discussed among themselves her position at HUP and in the University, and passed their evaluation onto their superiors").  In point of fact, Dr. Houser's conduct and communications in those respects were absolutely privileged as a matter of law.  *See id.*

Additionally, Dr. Feldman's claim for tortious interference fails because Dr. Houser cannot be liable for interference with an existing or potential contract with the institution he himself is an agent of.  Dr. Feldman alleges that Dr. Houser is Temple's Senior Associate Dean of Research. Counterclaims, ¶1.  Thus, Temple employs Dr. Houser.  And, Temple also employs Dr. Feldman. Yet Dr. Feldman alleges – repeatedly – that Dr. Houser somehow affected his relationships with "colleagues at Temple", prevented Dr. Feldman from lab space at Temple, prevented Dr. Houser

14

from all the fame and publicity he believed he deserved at Temple, and did all kinds of things at Temple to "diminish" Dr. Feldman **at Temple**. *See id.*, ¶58. So Dr. Feldman is alleging that Dr. Houser interfered with Dr. Feldman's relationship with their shared employer. Even if it were true (which it is not), the law is clear that Dr. Houser, as an agent of Temple, cannot be liable for tortious interference when Dr. Feldman "has or potentially has a contractual relationship with" Temple. *Nix*, 596 A.2d at 1136. Instead, it seems that Dr. Feldman's complaints are more with Temple than Dr. Houser.

In the Counterclaims, Dr. Feldman woefully failed to identify any prospective contracts that he had any reasonable likelihood of securing outside Temple, whom he already has a contractual relationship, that Dr. Houser interfered with. Dr. Feldman's vague references to "elsewhere", "well-regard[ed] authors", "obtaining recognition", and "obtain[ing] funding" all smack of a "hope" not a contract or even "something less than a contractual right." *See* Counterclaims, ¶58. Further, Dr. Feldman has not alleged that he had any contract with Dr. Elrod or any other author or collaborator or that he intended to have a contract with them such that a contract was lost, aborted, or rescinded. In point of indisputable fact, all of Dr. Feldman's allegations in support of this Count constitute a circumstance far below the law's standard of "something more than a mere hope." *Thompson Coal Co.*, 412 A.2d at 471.

Accordingly, the relevant case law applied to Dr. Feldman's actual allegations makes it overwhelmingly clear that Dr. Feldman's claims for tortious interference with existing or potential contractual relations fail as a matter of law and must be dismissed.

## V.      CONCLUSION

For all the foregoing reasons, Dr. Houser respectfully requests that this Court grant his Motion to Dismiss Dr. Feldman's Counterclaims for (1) Defamation and (2) Tortious Interference with Contractual Relations, with prejudice.

Dated: July 6, 2022                                    Respectfully submitted,

                                           */s/ David M. Burkholder*

                                           David M. Burkholder, Esquire
                                           Courtney A. Keaveney, Esquire
                                           dburkholder@wispearl.com
                                           ckeaveney@wispearl.com
                                           **WISLER PEARLSTINE, LLP**
                                           460 Norristown Road, Suite 110
                                           Blue Bell, PA 19422
                                           Telephone:      (610) 825-8400
                                           Facsimile:      (610) 828-4887

                                           Nicole D. Galli (PA Id. #78420)
                                           ndgalli@ndgallilaw.com
                                           **ND Galli Law LLC**
                                           One Liberty Place
                                           1650 Market Street
                                           Suite 3600, #00250
                                           Philadelphia, PA 19103
                                           Telephone:      215-525-9580
                                           Facsimile:      215-525-9585
                                           *Counsel for Plaintiff,*
                                           *Steven Houser, Ph.D., FAHA*